173 Ill. App.3d 436 (1988)
526 N.E.2d 368
WILLIAM MANELLA, Plaintiff-Appellant and Cross-Appellee,
v.
FIRST NATIONAL BANK & TRUST COMPANY OF BARRINGTON, as Trustee, et al., Defendants-Appellees (Janice Bianchi, Defendant-Appellee and Cross-Appellant).
No. 2-87-0361.
Illinois Appellate Court  Second District.
Opinion filed April 14, 1988.
*437 Eva W. Tameling, of Morgan, Martoccio & Tameling, of Hinsdale, for appellant.
Lawrence Ordower, of Ordower & Ordower, P.C., of Chicago, for appellee Janice Bianchi.
Reversed in part and remanded.
JUSTICE WOODWARD delivered the opinion of the court:
Plaintiff, William Manella (Manella), appeals the order of the trial court finding in favor of defendant, Janice Bianchi (Bianchi), and dismissing defendant First National Bank & Trust Company of Barrington (Bank) as a defendant. Defendant Bianchi cross-appeals that portion of the court's order finding in favor of plaintiff on her counterclaim. Plaintiff raises the following issues in his appeal: (1) the trial court erred in refusing to grant a continuance to permit plaintiff to testify; (2) the court erred in refusing to allow the testimony of attorney James Bolz; (3) the court erred in dismissing the bank from the case; (4) the court erred in finding in favor of defendant on plaintiff's complaint for conversion; and (5) the court erred in refusing to allow plaintiff's attorney to make a closing argument. On cross-appeal defendant Bianchi contends that the court erred in disregarding her unrebutted testimony and denying her counterclaim.
*438 Plaintiff filed his complaint on August 27, 1982, naming as defendants Bianchi, the bank as trustee under trust No. 11-2555, and Gregory and Patricia Samata (Samatas). The complaint alleged that in October 1981, Bianchi became the sole beneficial owner of a house at 317 First Street, West Dundee, Illinois. The property was held in a land trust with the bank as trustee. Plaintiff subsequently gave defendant a total of $27,500 to pay off mortgage arrearages and forestall foreclosure proceedings. In exchange for these payments, Bianchi allegedly agreed to execute a mortgage in favor of plaintiff. Bianchi subsequently conveyed her beneficial interest to the Samatas without executing a mortgage to plaintiff or repaying the money. The complaint requested the court to place an equitable lien on the property in favor of the plaintiff and enjoin the bank from further transferring the beneficial interest.
Bianchi's answer denied that she ever agreed to give plaintiff a mortgage on the property. Rather, she alleged that plaintiff gave her the money, as well as made other payments to her, in return for her promise to move in with plaintiff in a house they would purchase together in Florida, and that in November 1981, Bianchi did move, with her three children, to Florida and resided with plaintiff. This arrangement continued for approximately three months. Bianchi left the residence in February 1982, after plaintiff threatened her and her children with bodily harm. Bianchi also filed a counterclaim in which she alleged that on February 12, 1982, plaintiff entered the house and proceeded to demolish Bianchi's furniture and clothing. Plaintiff ordered defendant and her children to remove themselves from the premises. The counterclaim sought damages for destruction of Bianchi's personal property.
Plaintiff filed a second amended complaint on November 22, 1985. The amended complaint sought an injunction prohibiting the bank from assigning the equitable interest in the West Dundee property, an equitable lien against the property, and damages in the amount of $27,500. The amended complaint contained two new counts. Count II sought repayment of $10,000 which plaintiff allegedly loaned to Bianchi during the course of their relationship. Count III alleged that when Bianchi moved out of the Florida house, she took with her some of plaintiff's personal property. This count sought judgment for $70,550, the alleged value of this property.
Bianchi was the only witness at trial. She was called both as an adverse witness pursuant to section 2-1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2-1102) and in her own behalf. Plaintiff attempted to present testimony of attorney James Bolz, *439 but the court sustained defendant's objection on the ground that it was subject to the attorney-client privilege. Following Bianchi's section 2-1102 testimony, the trial court made a directed finding in favor of the Samatas and in favor of all defendants on count I. At the close of all the evidence, the court found in favor of Bianchi on the conversion count and in favor of plaintiff on defendant's counterclaim, stating only, "I don't think either side has proven his case." Plaintiff filed a timely notice of appeal, and defendant cross-appealed.
We will not consider plaintiff's issues Nos. 1, 4, and 5 and the denial of Bianchi's counterclaim as this case must be remanded for retrial for the reasons hereinafter set forth.
Curiously, plaintiff does not appeal the directed finding in favor of the Samatas, who are now the beneficial owners of the property. The Samatas are not involved in this appeal. Plaintiff's third issue on appeal is that the court erred in dismissing the bank as defendant. The bank has not filed a brief in this court.
 1 In any event, it is difficult to understand how the relief sought against the bank, an injunction prohibiting transfer of the beneficial interest, would in any way benefit plaintiff. The Samatas, the new beneficial owners, are no longer parties to this action, and plaintiff has apparently abandoned his claim for an equitable lien on the property. Bianchi, the person who would be primarily liable for repayment of the $27,500, is still a party, and plaintiff has failed to demonstrate that money damages would be an inadequate remedy. A prerequisite to the granting of equitable relief is a showing that the plaintiff has no adequate remedy at law. See Sta-Ru Corp. v. Mahin (1976), 64 Ill.2d 330, 333; Mearida v. Murphy (1982), 106 Ill. App.3d 705, 710.
Plaintiff's second contention is that the trial court erred in refusing to allow Bolz to testify and to permit further examination of Bianchi in reference to the meeting with the plaintiff and attorney Bolz in January 1982.
Defendant contends that the court correctly held that Bolz' testimony was subject to the attorney-client privilege. We set forth certain portions of the record pertinent to this issue. As stated before, the defendant was the only witness to testify, and portions of the testimony on this issue are set forth verbatim as follows:
"Q. [By plaintiff's attorney]: Your relationship with Mr. Manella was that the two of your [sic] were confidants. You had dinner together and talked about his problems and your problems?
A. And he had a severe hearing problem and I had  I helped him.

*440 Q. Is that true that that's what your relationship was with him.
A. Yes.
Q. In November of 1981, you moved to the State of Florida, is that correct?
A. Yes.
Q. Mr. Manella had purchased a house in the State of Florida; is that correct?
A. We had selected it together.
* * *
Q. You were divorced in earlier 1981?
A. Yes.
Q. And as part of that divorce decree you were granted property in West Dundee; is that correct?
A. That's correct.
Q. What was the address of that property?
A. 317 South First.
Q. South?
A. First Street.
Q. Mr. Manella assisted you in negotiating the sale on that property, isn't that correct?
A. Yes, he did.
Q. He was a very good businessman?
A. Yes.
Q. And you agreed that you wanted the property sold?
A. We made an arrangement.
Q. You agreed that you wanted the property sold, isn't that correct?
A. Yes.
* * *
Q. In addition to all of these payments Mr. Manella also during the summer of 1982 paid $4,500 towards your mortgage, isn't that correct?
A. He caught up the back payments, yes.
Q. That was approximately $4,500?
A. Yes.
Q. And the two of you went to a lawyer and paid that money to a lawyer, isn't that correct?
A. Yes.
Q. And then on or about January of 1982, approximately six months later, your mortgage on that property, this is the property in West Dundee, had gone into foreclosure; is that correct?

*441 A. No, it never went into foreclosure. We had a second mortgage and they wanted to foreclose.
Q. They had threatened to foreclose?
A. Yes.
* * *
Q. How much  approximately $23,000 was owed on that second mortgage, isn't that correct?
A. Yes.
Q. Now, on or about January of 1982, you and Mr. Manella went to an attorney's office; is that correct?
A. Yes.
Q. And that attorney's name was James Bolz, B-o-l-z?
A. Yes.
Q. And was he your attorney at that time?
A. Yes.
Q. How long had he been your attorney?
A. Since we started selling the home, which was probably just five months earlier. He was right down the block from us.
Q. During this conversation in January of `82, you and Mr. Manella were both present in front of Mr. Bolz; is that correct?
A. Yes.
Q. The two of you had an argument in front of Mr. Bolz, isn't that correct?
A. Partially. He left the room.
Q. And that argument between you and Mr. Manella lasted for about twenty minutes to half an hour?
A. Yes.
Q. And then when Mr. Bolz returned to the room, Mr. Manella gave him the $23,000, isn't that correct?
[Plaintiff's attorney]: Your Honor 
THE WITNESS: I don't remember."
At this point in the trial, the defendant's attorney objected to Mr. Bolz' testimony and also further testimony by Bianchi in reference to the meeting with attorney Bolz on the ground of attorney-client privilege. After discussion by the attorneys and the court, the following occurred:
"THE COURT: Counsel, you're saying Mr. Manella in this situation was acting as an agent of your client in that he was providing funds for this transaction?
[Plaintiff's attorney]: No, that wasn't their agreement."
After further discussion, the court sustained the objection of the defendant's attorney on the basis of the attorney-client privilege.
*442 Thereafter, plaintiff's attorney made an offer of proof which was substantially as follows:
"Janice Bianchi and William Manella met in the office of attorney James M. Bolz at which time William Manella gave $23,000 to Mr. Bolz with instructions for him to draw a mortgage. Mr. Bolz had no secretary in the office because it was late in the afternoon, he promised to type the mortgage and mail it down to the parties' address in Florida, and the parties left the money with Mr. Bolz with the understanding that the mortgage would be drawn and would be sent to Florida.
In fact, Mr. Bolz drew up the mortgage, and sent it to Florida for signing by the parties, but he never received an executed copy of same."
 2 Generally, the test of whether a statement made to an attorney is covered by the privilege is whether the person claiming the privilege intended that the communication be confidential. (E. Cleary & M. Graham, Handbook of Illinois Evidence § 505.5, at 258 (4th ed. 1984).) The presence of a third party normally indicates that the communication was not intended to be confidential. Thus, if two persons consult an attorney together, neither can claim the privilege in a subsequent dispute between them. (Lynn v. Lyerle (1885), 113 Ill. 128, 134; E. Cleary & M. Graham, Handbook of Illinois Evidence § 505.5, at 259 (4th ed. 1984).) An exception exists, however, where the party opposing the privilege was present as an agent of the client in the transaction at issue. (In re Estate of Busse (1947), 332 Ill. App. 258, 269; E. Cleary & M. Graham, Handbook of Illinois Evidence § 505.5, at 259 (4th ed. 1984).) The trial court, in upholding the privilege, specifically found that plaintiff was present as Bianchi's agent.
 3, 4 Although a reviewing court takes a deferential approach to findings made by a trial court on disputed facts and evidence, the scope of review on questions of law is independent, not deferential. (Havens v. Miller (1981), 102 Ill. App.3d 558.) The correctness of a trial court's ruling on a question of law will be determined on appeal independent of the trial court's judgment. (Crum v. Gulf Oil Corp. (1979), 70 Ill. App.3d 897.) On the basis of the above testimony and plaintiff's offer of proof, we conclude that the trial court's finding that plaintiff was Bianchi's agent was erroneous, and that attorney Bolz was acting as attorney for both plaintiff and Bianchi in preparing a mortgage document securing the money plaintiff was advancing to Bianchi. In view of the erroneous ruling by the trial court in respect to the attorney-client privilege as set forth above, this case must be remanded for a new trial except as to the trial court's previous ruling *443 dismissing the First National Bank & Trust Company of Barrington, as trustee under trust No. 11-2555 dated October 19, 1981, and as to any relief sought against defendants A. Gregory Samata and Patricia G. Samata, his wife.
Reversed in part and remanded.
NASH and REINHARD, JJ., concur.