SECOND DIVISION 

June 12, 2001

No. 1-00-1156

SHARON E. HAYES, Indiv. and as Special Adm'r of the Estate of Howard Hayes, Deceased,  

Plaintiff-Appellee,

v.

BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, 

Defendant-Appellant  

(Richard T. Sikes, Jr., Contemnor-Appellant).

)))))))))

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 99 L 7815

Honorable

David R. Donnersberger,

Judge Presiding.

 PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Defendant Burlington Northern and Santa Fe Railway Company appeals an order compelling production of two documents.  Defendant claims the documents are protected by the attorney-client and work product privileges.  Defendant also appeals an order of contempt entered against Richard T. Sikes, defendant's attorney, imposing a $100 fine when he refused to produce the documents.  We vacate the contempt order, reverse the order of the trial court to turn over the documents and remand for further proceedings consistent with this opinion.

Howard Hayes was working as a switchman for defendant when he was injured in a train accident on March 9, 1998.  Hayes signed a release on September 4, 1998, of all claims arising from the accident in exchange for $50,000. 

Hayes was later diagnosed with cervical herniations that required surgery.  Defendant reopened Hayes' claim file and paid for the surgery.  Hayes suffered a series of heart attacks during the surgery and died on May 4, 1999.  

Plaintiff Sharon E. Hayes filed a negligence complaint against defendant on July 15, 1999.  Plaintiff alleged that Hayes' death was caused by injuries he received in March 1998 while employed by defendant.  Defendant filed a motion to dismiss the complaint under section 2-619(a)(6) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(6) (West 1996)).  Defendant contended in the motion that the September 4, 1998, release barred plaintiff's claim.  

A dispute arose in the course of discovery when plaintiff asked for production of all documents in Hayes' claim file.  Defendant claimed two documents in the file were privileged: (1) a July 19, 1999, Federal Employers' Liability Act (FELA) (45 U.S.C. §51 (1994)) case summary sent to defendant's outside counsel; and (2) a July 19, 1999, letter to Paul Hoferer, defendant's general counsel, relating to plaintiff's lawsuit against defendant.  Both documents were written by Fred James, defendant's director of claims.  

Plaintiff filed a series of emergency motions to compel.  Plaintiff argued that defendant had waived the privilege by interposing the release executed by Hayes as affirmative matter in the motion to dismiss.  The trial court ordered defendant to produce the documents for an 
in camera
 inspection and to file an affidavit to support the claim of privilege.  Fred James's affidavit was filed on December 2, 1999.  

The trial court, after 
in camera
 review,  granted plaintiff's motion to turn over all documents in the claim file on or before December 8, 1999.  The court ruled that defendant failed to show that James was part of defendant's "control group" which would support an attorney-client privilege claim.  The court then ruled in the alternative that, even if James were a member of the control group, privilege was waived when the release was placed in issue by defendant's motion to dismiss.  Defendant filed an emergency motion for reconsideration on December 7 and asked for leave to file an additional affidavit and case law.  This motion was denied.  Defendant filed a second motion to reconsider which set out facts attempting to establish that James was a member of defendant's control group.  In response to this motion, the trial court set a briefing schedule and allowed plaintiff to depose James.  

The trial court held a hearing on March 8, 2000.  The court again ordered defendant to produce the two disputed documents, relying on the reasoning of its first order.  Counsel for defendant refused.  The court found attorney Sikes in contempt and imposed a $100 fine.  This appeal followed.

We review three related questions: (1) is James a member of defendant's control group? (2) if he is, do the documents meet the three-part test to establish privilege set out in 
Waste Management, Inc. v. International Surplus Lines, Insurance Co.
, 144 Ill. 2d 178, 579 N.E.2d 322 (1991)? and (3) did defendant waive the privilege by raising the issue of the release as affirmative matter in its motion to dismiss?

The party claiming a privilege bears the burden of proof.  
Cox v. Yellow Cab Co.
, 61 Ill. 2d 416, 337 N.E.2d 15 (1975).
  We review the question of whether a privilege exists 
de novo
.  
Midwesco-Paschen Joint Venture for the Viking Projects v. IMO Industries, Inc
., 265 Ill. App. 3d 654, 660, 638 N.E.2d 322 (1994). 

To prevail on an attorney-client privilege claim in a corporate context, a claimant must first show that a statement was made by someone in the corporate control group.  
Consolidation Coal Co. v. Bucyrus-Erie Co.
, 89 Ill. 2d 103, 120, 432 N.E.2d 250 (1982).  Our supreme court has described a control group as one that includes those employees "whose advisory role to top management in a particular area is such that a decision would not normally be made without [their] advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority."  
Consolidation Coal
, 89 Ill. 2d at 120.  

We believe defendant's unrebutted affidavit met the burden to establish that James is a member of defendant's control group.  The facts alleged in James's deposition and affidavit were not challenged.  James's deposition and affidavit declare that he is the sole director of claims for personal injury and FELA claims filed against defendant in the Midwest region.  James coordinates these claims with outside counsel, provides case information, directs trial strategy and gives outside counsel settlement authority.  James said he evaluates all claims for liability and damage assessment and that his analysis is relied on when a claim in his region is resolved.  There is no evidence in the record that anyone above James in the corporate hierarchy reviews these decisions.  

Plaintiff argues in response that James nevertheless is not top management, but one of nine claims directors.  James is described in plaintiff's brief as "more akin to an employee of a corporation that supplies information to *** the control group that act irrespective of his contribution."  Plaintiff points out that James's authority is limited to FELA and personal injury claims under $250,000 and that he does not hire outside counsel.  Plaintiff further argues, based on James's admission during his deposition,  that the FELA case summary was an objective summary of facts and that James's letter conveyed general information about plaintiff's complaint.  Plaintiff also points out neither document contains James's mental impressions or litigation plans.  

Plaintiff's analysis is not supported by authority as required by Supreme Court Rule 341(e)(7).  177 Ill. 2d R. 341(e)(7).  That aside, plaintiff's argument ignores the sworn statements in James's affidavit and overlooks the analysis in 
Consolidation Coal
.  James's unrebutted statement that he evaluates all claims, directs trial strategy and controls settlement authority is more than sufficient to meet the test of control group membership. 

Plaintiff's argument also fails to distinguish the attorney-client privilege in a corporate context from the work product privilege.  
Waste Management
, 144 Ill. 2d at 188.  The attorney-client privilege belongs to and can only be waived by the client.  
In re Marriage of Decker
, 153 Ill. 2d 298, 313, 606 N.E.2d 1094 (1992).  The work product doctrine is broader than the attorney-client privilege and protects the right of an attorney to prepare his case and preclude the less diligent attorney from taking undue advantage of his opponent's preparation.  
Waste Management
, 144 Ill. 2d at 196.  Work product is not at issue in this case unless James is viewed as an attorney for defendant rather than a corporate officer who happens to be a member of the control group.  Neither plaintiff nor defendant argues that James was acting as an attorney for defendant.  The documents sought were prepared by James, an officer of the client for transmittal to an attorney, who in turn was trying to settle the claim.  See 
Dalen v. Ozite Corp.
, 230 Ill. App. 3d 18, 594 N.E.2d 1365 (1992) (work product applies only to those documents prepared for and in anticipation of litigation and contain an attorney's mental impressions).   

We must next decide whether defendant established that the documents are subject to the attorney-client privilege, assuming James, as a member of the control group, is capable of generating privileged documents. 

Supreme Court 201(b)(2) protects certain attorney-client communications from discovery.  134 Ill. 2d R. 201(b)(2).  The privilege is not without conditions.  The privilege, not the duty to disclose, is the exception.  
Waste Management
, 144 Ill. 2d at 190.  A claimant must meet three requirements to trigger the privilege: (1) the statement must originate in the confidence that it will not be disclosed; (2) it must be made to an attorney acting in his official capacity; and (3) the statement must remain confidential.  
Consolidation Coal
, 89 Ill. 2d at 119; 
Waste Management
, 144 Ill. 2d at 190.  Defendant met these requirements when the factual assertions in James's affidavit went unrebutted.  James said in his affidavit that he drafted the FELA case summary with the intent that it remain confidential.  He said the summary was created to obtain legal advice from outside counsel, Richard Sikes, in his official capacity as defendant's attorney.  Sikes said he kept the summary confidential.  

James testified that the letter was also created to obtain legal advice from defendant's general counsel, Hoferer.  James said he intended the letter to remain confidential and that he believed Hoferer maintained the letter's confidentiality.  

Plaintiff refutes none of these facts.  We accept them as true.  See 
Carlile v. Snap-On Tools
, 271 Ill. App. 3d 833, 834, 648 N.E.2d 317 (1995) (unrefuted facts accepted as true for purposes of appeal).  The facts are sufficient to meet the Waste Management three-part test.   Finally, we consider whether the privilege was waived when defendant interposed the release as affirmative matter in the motion to dismiss.  Plaintiff argues that there exists evidence of defects in the release that can only be established if plaintiff is given access to the documents defendant claims to be privileged.  Plaintiff claims that if defendant relies on the release, he cannot shield documents from disclosure that would enable plaintiff to show that the release is subject to one of the grounds for setting it aside: mistake, undue influence, duress, fraud in the inducement or execution.  
Blaylock v. Toledo, Peoria & Western R.R. Co.
, 43 Ill. App. 3d 35, 37, 356 N.E.2d 639 (1976).  

An analogous argument was rejected by our supreme court in 
Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc
., 189 Ill. 2d 579, 727 N.E.2d 240 (2000), in the context of an attorney malpractice action.  In 
Fischel
, the court considered whether a client, sued by his former attorneys for unpaid legal fees, waived the attorney-client privilege with his new lawyers when he filed a counterclaim alleging legal malpractice.  
Fischel
, 189 Ill. 2d at 584.  The former attorneys seeking fees successfully argued in the trial court that, to defend against the counterclaim for malpractice, access to the client's privileged communications with his new lawyers was necessary.  The former attorneys argued that the privilege was waived when the client made malpractice an issue.  
Fischel
, 189 Ill. 2d at 583.  Our supreme court found that the client had waived only the attorney-client privilege with the attorneys who sued him.  
Fischel
, 189 Ill. 2d at 585.  The court stopped short of finding waiver of the privilege between the client and subsequently retained counsel:    

"However, we do not believe that it follows that [the former client] *** has waived the attorney-client privilege with respect to communications between it and its subsequent counsel."  
Fischel
, 189 Ill. 2d at 585.  

The court reasoned that to find otherwise would "render the privilege illusory with respect to the communications between [the former client] and [its present attorney]" and unjustifiably curtail the privilege.  
Fischel
, 189 Ill. 2d at 586-87.     

We believe a similar analysis is appropriate here.  The argument for waiver is the same: plaintiff believes the attorney-client privilege should yield when evidence contained in defendant's documents may help plaintiff to rebut an issue raised by defendant.

As in 
Fischel
, the resolution of these conflicting rights is rooted in a public policy argument.  The attorney client privilege is derived from the common law.
  
People v. Knuckles
, 165 Ill. 2d 125, 131, 650 N.E.2d 974 (1995).  It is a limited evidentiary privilege that protects communications made by the client.  
In re Marriage of Decker
, 153 Ill. 2d 298, 312-13, 606 N.E.2d 1094 (1993).  The privilege encourages full and frank consultation between client and legal advisor by removing the fear of compelled disclosure.  
Consolidation Coal
, 89 Ill. 2d at 117-18.    While it is true that the FELA case summary and letter may be a convenient source of the information plaintiff seeks, "[m]ere convenience, however, should not justify waiver of the attorney-client privilege.
  To allow [plaintiff] access to the privileged documents in this case would, we believe, unnecessarily undermine the purpose of the attorney-client privilege to encourage full and frank communication between attorneys and their clients."  
Fischel
, 189 Ill. 2d at 590.  

Last, we vacate the order of contempt and fine assessed against Richard Sikes, in light of our conclusion.

We consider one final point because of ambiguous language in the appellee's brief.  Plaintiff argued before the trial court that, by placing the release in issue, defendant waived the privilege which might attach to documents in its possession that would tend to show that the release was defective.  Plaintiff did not argue that defendant should be estopped from imposing the release as a defense because it paid for some of Hayes' expenses after the release was signed.  On appeal, however, plaintiff argues, without citation to authority, that defendant "ratified the invalidity of the release" by reopening the claim, then authorizing and paying the medical expenses incurred after plaintiff signed the release.  What perhaps plaintiff meant to say in her brief is not that "invalidity" was ratified, but that, the issue of privilege aside, defendant waived the right to rely on a valid release by paying additional claims after the release was signed.  This argument does not need privileged documents to be developed.  Plaintiff need only have framed the question squarely as one of waiver of a release.  Our review of the record shows that plaintiff never raised estoppel or waiver in the trial court.  As an appellee, plaintiff is not barred from pursuing this issue on remand.  See 
Material Service Corp. v. Department of Revenue
, 98 Ill. 2d 382, 387, 457 N.E.2d 9 (1983) (cross-appeal not required to preserve issue if trial court judgment was not adverse to appellee).      

We vacate the contempt order, reverse the order of the trial court to turn over the documents and remand for further proceedings consistent with this opinion.

Vacated in part, reversed and remanded.

COUSINS and McBRIDE, JJ., concur.