GRACE LAMA, Plaintiff-Appellant, v. DAVID PRESKILL, Defendant-Appellee.

Second District   No. 2—03—1362

Opinion filed November 5, 2004.

BOWMAN, J., dissenting.

Edmund J. Scanlan and Mario C. Palermo, both of Scanlan Law Group, of Chicago, for appellant.

Marc F. Benjoya, Tami J. Reding, and Morgan M. Strand, all of Cassiday, Schade & Gloor, of Chicago, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, Grace Lama, appeals a contempt order imposed against her and her attorney, Edmund J. Scanlon, when they refused to produce documents that the trial court ordered them to turn over. Plaintiff argues that the documents are protected by the attorney-client privilege and are not discoverable. For the following reasons, we affirm the trial court's judgment that the contested documents are not protected by the attorney-client privilege, but we vacate the contempt order.

On May 15, 2001, plaintiff filed a complaint alleging that defendant, David Preskill, M.D., negligently performed a March 23, 1999, laparoscopy of an ovarian cyst. According to plaintiff, during the laparoscopy, defendant negligently incised the retroperitoneum, which

caused plaintiff to require an emergency laparotomy. In addition, plaintiff alleged that she first became aware of defendant's negligence on June 28, 1999.

Defendant subpoenaed all of plaintiff's medical records and bills. Defendant also moved to dismiss the complaint under section 2—619(a)(5) of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619(a)(5) (West 2000)). In his motion, defendant argued that plaintiff's cause of action was barred by the two-year limitations period for suing a physician, which is provided in section 13—212 of the Code (735 ILCS 5/13—212 (West 2000)). According to defendant, plaintiff's cause of action became time-barred after March 23, 2001, or two years after the laparoscopy. In support of the motion, he claimed that plaintiff knew of defendant's allegedly negligent conduct at the time of the laparoscopy because she required additional emergency surgical procedures for stabilization.

On October 24, 2001, the trial court denied defendant's motion without prejudice. It found that a question of fact existed regarding when plaintiff became aware of the alleged negligence.

On August 21, 2002, defendant moved for summary judgment. As support for the motion, defendant relied on plaintiff's deposition testimony to establish that she knew of the alleged negligence at the time of the laparoscopy. During her deposition, plaintiff testified that the laparoscopy was to be performed on an outpatient basis. Yet, following the surgery, she was in the intensive care unit and hospitalized for five days. Plaintiff stated that she first thought that her injuries might have been wrongfully caused when she heard in passing that defendant could no longer perform surgeries. However, plaintiff was unable to recall when the comment about defendant was made, exactly where she was at the time, or who made the comment.

Additionally, in his reply, defendant stated that, three days after her surgery, plaintiff requested her medical records. Via an affidavit, attorney Terrence Carden averred that, on March 27, 1999, four days after the surgery and while plaintiff was still hospitalized, plaintiff's husband, William, met with him on plaintiff's behalf. William brought plaintiff's medical records to the meeting.

Plaintiff moved to strike Carden's affidavit. Plaintiff argued that William did not give Carden permission to disclose the matters they discussed during their meeting, and, thus, by making the disclosure, Carden had violated Rules 1.6 and 1.9 of the Illinois Rules of Professional Conduct (155 Ill. 2d R. 1.6; 134 Ill. 2d R. 1.9)). Determining that Carden's affidavit did not reveal any privileged information, the court denied plaintiff's motion to strike. It also granted defendant's summary judgment motion. In doing so, the court held that no issue of fact existed

regarding when plaintiff knew of her injury because she needed the emergency surgery following the laparoscopy and William met with a malpractice attorney, Carden, shortly after the emergency surgery.

Plaintiff moved the court to reconsider the summary judgment. Via an affidavit, William admitted that he met with Carden on March 27, 1999, but he averred that he had never told plaintiff about the meeting or what was discussed during that meeting. The trial court granted plaintiff's motion to reconsider, concluding that a question of fact existed regarding whether plaintiff was aware of William's meeting with Carden. The court vacated the summary judgment.

On July 25, 2003, defendant subpoenaed Carden to appear for a deposition and produce documents, including William's client file. Plaintiff's attorney wrote to Carden and told him that plaintiff and William were not waiving any attorney-client privilege relating to William's meeting with Carden. Carden replied that he would comply with the subpoena by providing the documents to the court for an *in camera* review.

On August 19, 2003, defendant moved for an *in camera* inspection of the documents in Carden's client file. Defendant requested that, following the court's review, he be provided with the relevant documents. The court conducted its review. On its own motion at a subsequent hearing, the court found that some documents in Carden's file were relevant and ordered that they be copied and delivered to plaintiff's counsel to ensure that counsel was aware of the file's contents.

Defendant moved for the relevant documents to be turned over. In his memorandum, defendant argued that, by invoking the discovery rule to toll the limitations period, plaintiff placed at issue the matter of when she discovered her injury and, thereby, waived the attorney-client privilege to Carden's documents. In addition, defendant insisted that William acted as plaintiff's agent and, therefore, plaintiff was charged with knowledge of her agent's communications.

In response, plaintiff argued that she was unable to waive an attorney-client privilege between a third party, William, and Carden. Furthermore, she insisted that she was not attempting to use the privileged documents to establish that the discovery rule applied to her case and claimed that she had not brought into the lawsuit the issue of when she learned of her injury. Instead, she contended that defendant raised the issue by asserting as an affirmative defense that her claim was untimely. As for defendant's contention that William acted as plaintiff's agent, she asserted that there was no evidence that she authorized William to consult with an attorney on her behalf.

At an October 9, 2003, hearing, the court granted the motion and ordered that plaintiff turn over the relevant documents from Carden's

file by October 17, 2003. Acknowledging that the parties disagreed about who placed the matter at issue, the court found that plaintiff raised the issue by filing her complaint after the limitations period and, thereby, invoking the discovery rule. Moreover, the court noted that plaintiff signed the authorization for the medical records that William took to his meeting with Carden. The court held that plaintiff had waived the attorney-client privilege, and it ordered her to give defendant Carden's documents relating to plaintiff's discovery of her injury.

Maintaining that the documents were protected by the attorney-client privilege, plaintiff did not comply with the court's order. On October 17, 2003, the court ordered that plaintiff turn over the documents by October 24, 2003, or be found in contempt. Plaintiff still did not comply. Defendant moved the court to find plaintiff in contempt and award sanctions. To allow plaintiff to immediately appeal the discovery issue, the court found plaintiff and her attorney in contempt and awarded $100 in fines. Pursuant to Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)), plaintiff filed this interlocutory appeal.

As noted above, plaintiff initiated an interlocutory appeal after she refused to comply with the trial court's discovery order, was held in contempt, and was sanctioned. Ordinarily, discovery orders are not final and, thus, not appealable. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). However, contempt proceedings may be used to test the correctness of a discovery order. *Norskog*, 197 Ill. 2d at 69. Therefore, when a party appeals contempt sanctions imposed for violating a pretrial discovery order, our review of the contempt finding necessarily requires review of the discovery order on which it was based. *Norskog*, 197 Ill. 2d at 69.

Under section 13—212(a) of the Code, a plaintiff must sue a physician for injuries no more than two years after the date "on which the claimant knew, or through the use of reasonable diligence should have known," that his or her injury existed. 735 ILCS 5/13—212(a) (West 2000). The common-law discovery rule postpones the commencement of the limitations period until the injured person possesses sufficient information concerning his or her injury and its cause to put a reasonable person on notice to make further inquiries. *Swann & Weiskopf, Ltd. v. Meed Associates, Inc.*, 304 Ill. App. 3d 970, 975 (1999). In her complaint, plaintiff stated that the negligence occurred during her March 23, 1999, laparoscopy but that she "first became aware that her injuries were wrongfully caused on or about the 28th of June, 1999." She filed the complaint on May 15, 2001. However, unless the limitations period was tolled by the discovery rule, plaintiff's claim became time-barred on March 23, 2001.

Defendant maintains that, by alleging in the complaint that she did not discover her injury until June 1999, plaintiff waived the attorney-client privilege as to confidential communications concerning when she knew she was injured. The trial court agreed. On appeal, plaintiff argues that the trial court erred by holding that she introduced the issue of when she knew of her injury and, thereby, waived the attorney-client privilege concerning communications relevant to that issue. To the contrary, she insists that defendant created the issue by asserting as an affirmative defense that her complaint was untimely. We review *de novo* the question of whether an attorney-client privilege or any exception thereto exists. *Sterling Finance Management, L.P. v. UBS PaineWebber, Inc.*, 336 Ill. App. 3d 442, 446 (2002).

■ The attorney-client privilege protects communication made in confidence by a client to a professional legal advisor where the client seeks legal advice from that advisor. *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 584 (2000). " 'The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information.' " *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190 (1991), quoting *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 117-18 (1982). The privilege, however, is not without conditions and should be "strictly confined within its narrowest possible limits." *Waste Management*, 144 Ill. 2d at 190.

■ The protections afforded by the attorney-client privilege can be waived by the client. *Fischel & Kahn*, 189 Ill. 2d at 584. The waiver can be either express or implied. *Pyramid Controls, Inc. v. Siemens Industrial Automations, Inc.*, 176 F.R.D. 269, 272 (N.D. Ill. 1997). The privilege may be impliedly waived when the client asserts claims or defenses that put his or her communications with the legal advisor at issue in the litigation. *Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387, 394 (2002). In other words, an implied waiver occurs "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." *Pyramid Controls*, 176 F.R.D. at 272. This type of waiver is referred to as an "at issue" waiver. For example, when clients sue their attorneys for malpractice, or when lawyers sue their clients for fees, a waiver applies to the earlier communications between the now-adversarial parties. *Shapo*, 336 Ill. App. 3d at 394.

■ We note that, in this case, plaintiff personally claims the attorney-client privilege for Carden's documents. However, as the privilege belongs to the client, her husband William possessed the

privilege regarding his meeting with Carden, unless William was acting as an agent for plaintiff. When an agent communicates with the principal's attorney, the agent speaks as the client, or principal, and his or her communications are protected to the same extent as though the principal was speaking. See *Manella v. First National Bank & Trust Co. of Barrington*, 173 Ill. App. 3d 436, 442 (1988). Generally, communications made to a legal advisor through one serving as an agent of the client will be privileged. *Manella*, 173 Ill. App. 3d at 442. As plaintiff remained hospitalized when William met with Carden, for her to assert the attorney-client privilege for Carden's documents, William must have acted as her agent during that meeting.

Here, in determining that the attorney-client privilege for the documents had been waived, the trial court implicitly found that William was plaintiff's agent. The record supports that conclusion, and plaintiff does not dispute it on appeal. William met with Carden four days after plaintiff's surgery, while plaintiff was hospitalized. Plaintiff authorized the hospital to prepare her medical records, and William took those records with him to the meeting with Carden. Moreover, in his affidavit, Carden stated that William met with him on plaintiff's behalf. William's counteraffidaivt does not refute this fact. We will accept as true unrefuted facts. *Hayes v. Burlington Northern & Santa Fe Ry. Co.*, 323 Ill. App. 3d 474, 479 (2001). Consequently, we now address whether the attorney-client privilege was waived.

Plaintiff argues that defendant, not plaintiff, raised the issue of when plaintiff knew of her injury by asserting the affirmative defense that the complaint was untimely. We do not agree. In her complaint, anticipating that timeliness would be an issue, plaintiff alleged that the limitations period was tolled because she first learned of her injury in June 1999. Consequently, at the onset of the lawsuit, plaintiff raised the issue of whether she knew or should have known of her injury prior to the end of the limitations period. As a result, plaintiff voluntarily injected into the case the factual and legal issues of when she learned of her injury. She thus waived any attorney-client privilege regarding her agent's communications with Carden. We agree with the trial court that defendant was entitled to Carden's documents relating to when plaintiff learned of her injury.

A similar resolution was reached in *Pyramid Controls*. In that case, the plaintiff sued the defendant in 1997, alleging that the defendant violated the Franchise Disclosure Act of 1987 (the Act) (815 ILCS 705/27 (West 1996)) by terminating its franchise in 1995. *Pyramid Controls*, 176 F.R.D. at 271. Under the Act, a lawsuit for a violation of the Act must be filed within one year from when a party becomes aware of the violation. *Pyramid Controls*, 176 F.R.D. at 273.

The plaintiff alleged that it was not until it met with its current legal counsel in 1997 that it discovered that its corporation was a franchise under the Act and that the defendant's action violated the Act. *Pyramid Controls*, 176 F.R.D. at 271. In its answers to interrogatories, the plaintiff admitted that it met with its former legal counsel in 1995. *Pyramid Controls*, 176 F.R.D. at 271.

The defendant asked the court to order the plaintiff to produce records of the plaintiff's communications with its prior attorney, and the plaintiff objected based on the attorney-client privilege. *Pyramid Controls*, 176 F.R.D. at 271. The court ordered the plaintiff to submit all communications with its attorneys from the time of its termination until one year from that date. *Pyramid Controls*, 176 F.R.D. at 275. The court concluded that, by trying to defeat the limitations period, the plaintiff had put at issue what communications and advice the plaintiff received from its prior attorney. *Pyramid Controls*, 176 F.R.D. at 275. Reasoning that those communications were important because the issue had become what advice the plaintiff received after discussing with its attorney the circumstances of its termination, the court held that the plaintiff had waived the attorney-client privilege for those communications. *Pyramid Controls*, 176 F.R.D. at 275. To determine if the lawsuit was within the limitations period, this information was necessary to resolve if the plaintiff became aware of the defendant's alleged violation in 1996 or in 1997, as it claimed. *Pyramid Controls*, 176 F.R.D. at 274.

■ As in *Pyramid Controls*, in this case, plaintiff's husband, acting as plaintiff's agent, met with an attorney shortly after the circumstance occurred that gave rise to the lawsuit. Plaintiff then sued after the limitations period and invoked the discovery rule. As plaintiff invoked an exception to the limitations period by alleging that she was unaware of her claim until months after the surgery, whether she met this exception is an issue she injected into the case. As a result, plaintiff has waived the privilege to the documents from her agent's meeting with Carden. Moreover, because plaintiff invoked the discovery rule to sue defendant, defendant needs this information to ascertain the truth of plaintiff's assertion that the rule applies.

Additionally, defendant argues on appeal that we should affirm the trial court's order to turn over the documents on the grounds that (1) plaintiff did not establish that an attorney-client relationship existed between William and Carden, (2) the documents sought did not contain confidential communications, and (3) plaintiff did not meet with Carden to establish a confidential relationship. Because we determine that the attorney-client privilege was waived, we need not reach these issues.

In closing, we affirm the trial court's decision that the attorney-client privilege is inapplicable to the documents that were ordered produced. Because the trial court entered the contempt order to facilitate appellate review of the discovery issue and specifically stated that plaintiff's behavior was not contumacious, we vacate the contempt order.

For the foregoing reasons, the order of the circuit court of Lake County to turn over documents is affirmed, the contempt order and the fines assessed are vacated, and the cause is remanded for further proceedings.

Affirmed in part and vacated in part; cause remanded.

BYRNE, J., concurs.

JUSTICE BOWMAN, dissenting:
I respectfully dissent. In my opinion, the majority's decision effectively dissolves the attorney-client privilege in every case where the statute of limitations is pleaded as a defense and the client relies on the discovery rule to overcome the limitations period. Because plaintiff never placed communications with her prior attorney at issue so as to waive her attorney-client privilege, I do not believe that defendant should be entitled to the contested documents.

The facts are clear that on March 23, 1999, defendant performed on plaintiff a laparoscopy of an ovarian cyst. On May 15, 2001, plaintiff filed a complaint against defendant alleging that she first became aware of defendant's negligence on June 28, 1999. Defendant raised the statute of limitations as a defense, arguing that plaintiff's cause of action became time-barred after March 23, 2001. Specifically, defendant claimed that plaintiff knew of his allegedly negligent conduct before June 28, 1999, because her husband met with a malpractice attorney, Carden, four days after plaintiff's surgery. Defendant moved for an *in camera* inspection of the documents in Carden's client file and requested that he be provided with the relevant documents. Determining that plaintiff placed the communications with her former attorney at issue by invoking the discovery rule to defeat the limitations period, the court ordered plaintiff to turn over the relevant documents from Carden's file.

The majority now affirms the trial court's decision by concluding that plaintiff "voluntarily injected into the case the factual and legal issues of when she learned of her injury." 353 Ill. App. 3d at 306. Because there are no Illinois cases addressing this issue, the majority relies on a federal case, *Pyramid Controls, Inc. v. Siemens Industrial*

*Automations, Inc.*, 176 F.R.D. 269 (N.D. Ill. 1997), which also involved a statute of limitations defense. There, the plaintiff alleged that the defendant had violated the Franchise Disclosure Act of 1987 (815 ILCS 705/27 (West 1996)) by terminating its franchise in 1995. *Pyramid Controls*, 176 F.R.D. at 271. In an attempt to defeat the one-year time limitation defense, the plaintiff alleged that it was not until it met with its current legal counsel in 1997 that it discovered its possible claim against the defendant. *Pyramid Controls*, 176 F.R.D. at 274. In its answers to interrogatories, the plaintiff admitted that, after being notified of the alleged termination, it was represented by former counsel when it sold its assets to another company in 1995. *Pyramid Controls*, 176 F.R.D. at 271. The defendant requested that the plaintiff produce records of the plaintiff's communications with its former counsel, and the plaintiff objected based on the attorney-client privilege. *Pyramid Controls*, 176 F.R.D. at 271. In order to determine whether the plaintiff had placed these communications at issue, the court applied the at-issue waiver test articulated in *Hearn v. Rhay*, 68 F.R.D. 574, 580 (E.D. Wash. 1975).

Under *Hearn*, a client waives the attorney-client privilege if (1) assertion of the privilege is the result of some affirmative act by the asserting party, such as filing suit; (2) through the affirmative act, the asserting party has placed the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to information vital to its defense. *Pyramid Controls*, 176 F.R.D. at 272, citing *Hearn*, 68 F.R.D. at 581. Based on *Hearn*'s three-pronged test, the court concluded that the plaintiff, by attempting to defeat the statute of limitations, had put at issue the communications with its former attorneys concerning the alleged termination. *Pyramid Controls*, 176 F.R.D. at 274-75. According to the court, "invasion of the attorney-client privilege [was] necessary because the specific content of those communications [was] essential to resolving the statute of limitations issue." *Pyramid Controls*, 176 F.R.D. at 274.

However, commentators, academics, and courts have strongly criticized the standard set forth in *Hearn*. *Public Service Co. of New Mexico v. Lyons*, 129 N.M. 487, 493-94, 10 P.3d 166, 171-72 (App. 2000); *Developments in the Law-Privileged Communications*, 98 Harv. L. Rev. 1450, 1640-42 (1985). In particular, it is criticized for focusing on the opposing party's need for the privileged information despite the Supreme Court's emphasis on the role of certainty in encouraging the full and frank communication between attorneys and their clients. 98 Harv. L. Rev. at 1641. Further, the *Hearn* approach does not target the type of unfairness that is distinguishable from the unavoidable unfair-

ness generated by every assertion of privilege, and its application cannot be limited. 98 Harv. L. Rev. at 1641-42. According to the Third Circuit, cases like *Hearn* that have allowed the opposing party discovery of confidential attorney-client communications in order to test the client's contentions are of dubious validity. *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 864 (3d Cir. 1994). The *Rhone* court explained:

> "While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Rhone-Poulenc Rorer*, 32 F.3d at 864.

Because this is a case of first impression, and because state and federal courts are anything but uniform in identifying what constitutes an "at-issue waiver" in a given case, I respectfully submit that the *Hearn* standard employed in *Pyramid Controls* should not be followed. Otherwise, in virtually every case where the statute of limitations is pleaded as a defense and the client relies on the discovery rule to overcome the limitations period, the opposing party may discover confidential communications between the client and the attorney merely to test the client's credibility. See *Darius v. City of Boston*, 433 Mass. 274, 282, 741 N.E.2d 52, 58 (2001) (holding that, where a defendant asserts a statute of limitations defense and the plaintiff relies on the discovery rule to overcome that defense, the defendant may not, based solely on the plaintiff's invocation of the discovery rule, automatically probe the plaintiff's attorney-client relationship simply to determine whether the plaintiff may have revealed something to his or her attorneys that might be helpful to the defendant's case). To allow such discovery would effectively swallow the privilege, rendering it useless even though the privilege holder never directly put the privileged information at issue in the case.

Based on the criticism of *Hearn*, I propose an approach to at-issue waiver recently adopted by several courts. See *Lyons*, 129 N.M. at 492, 10 P.3d at 171 (several courts have recently concluded that a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation). These jurisdictions limit the extent of the at-issue waiver doctrine to circumstances in which the "privilege-holder injects the privileged material itself into the case." *Aranson v. Schroeder*, 140 N.H. 359, 370, 671 A.2d 1023, 1030 (1995), quoting R. Marcus, *The Perils of Privilege: Waiver*

*and the Litigator*, 84 Mich. L. Rev. 1605, 1633 (1986). In other words, when the party asserting the privilege has injected the privileged material into the case, such that the information is actually required for resolution of the issue, the holder of the privilege must either waive the attorney-client privilege or be prevented from using the privileged information to establish the elements of the case. *Aranson*, 140 N.H. at 370, 671 A.2d at 1030. This approach requires offensive or direct use of privileged materials before the party will be deemed to have waived its attorney-client privilege. *Lyons*, 129 N.M. at 494, 10 P.3d at 173.

The case at bar is not a situation where the plaintiff has taken the affirmative step of placing the advice of her former attorney at issue in order to assert a claim or defense. Rather, it is defendant who seeks to discover plaintiff's husband's communications with Carden in order to disprove plaintiff's claim. Because plaintiff, as privilege holder, is not attempting to prove her claim (or defense) by relying upon these privileged communications in order to prevail, she has not waived any attorney-client privilege with Carden. Thus, in accordance with *de novo* review, I would reverse the trial court's order to turn over any documents to defendant.