# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Radojcic*, 2012 IL App (1st) 102698

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BUDIMIR RADOJCIC and MARK HELFAND, Defendants-Appellees (Suzana Radojcic, Mirjana Omickus, Christa Patterson, Defendants). |
| District & No. | First District, Third Division<br>Docket No. 1-10-2698 |
| Filed | May 2, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for financial institution fraud, the trial court erred in striking defendant's attorney from the list of witnesses, since the State presented sufficient testimony to give a reasonable person cause to suspect that defendant used his communications with his attorney to advance his attempts to commit fraud, and under those circumstances, the attorney-client privilege did not preclude the attorney's testimony. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-25197; the Hon. Thomas J. Hennelly, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Michael M. Glick, and David Simpson, Assistant Attorneys General, of counsel), for the People.

Len Goodman Law Office LLC (Leonard C. Goodman and Melissa A. Matuzak, of counsel), and Michael J. Pelletier, Alan D. Goldberg, and Michael G. Soukup, all of State Appellate Defender's Office, both of Chicago, for appellees.

Panel

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Presiding Justice Steele and Justice Salone concurred in the judgment and opinion.

## OPINION

¶ 1     In this prosecution for financial institution fraud and other crimes, the trial court held that attorney-client privilege barred the State from calling defendant-appellee Budimir Radojcic's former attorney as a witness. We address two questions in the appeal: (1) Did the trial court follow proper procedures for deciding whether to bar the proposed witness?; and (2) Did the evidence show that the attorney-client privilege applied to the communications between the defendant and his former attorney?

¶ 2     We hold that before the trial court excludes testimony from an attorney because of attorney-client privilege, the court must consider whether the party seeking to use the testimony has made a sufficient showing to give the court reason to question witnesses *in camera* to determine whether the attorney-client privilege applied to the communications between the attorney and the client. We find that the State presented testimony that would give a reasonable person cause to suspect that the client here used his communications with his attorney to advance his attempts to commit crimes or fraud. Accordingly, we hold that attorney-client privilege does not preclude testimony from the attorney here, and we reverse and remand for a trial at which the State may call the attorney as a witness.

¶ 3                         BACKGROUND

¶ 4     From 2002 through 2008, Mark Helfand represented Budimir Radojcic in connection with several real estate transactions. Federal investigators who studied some of the transactions believed they saw evidence of crimes. In August 2007, the Illinois Attorney General sought to persuade a grand jury to return indictments against Radojcic, Helfand and several other persons involved in the real estate transactions.

¶ 5     Christa Patterson testified before the grand jury that Radojcic hired her to work for Jewel

-2-

Windows, a corporation he operated. Patterson explained that Radojcic, through several corporations including Jewel Windows, purchased apartment buildings in Chicago and converted the units into condominiums. He then found straw buyers who would first purchase the units at the prices Radojcic set, and then sell the units to other corporations Radojcic operated. The straw buyers sent false information to mortgage brokers to obtain loans for the straw purchases.

¶ 6    Patterson described the process to the grand jury with the specific example of Daniella Kuljanin, who purchased all three condominium units in a building Radojcic converted to condominiums. Kuljanin obtained separate loans from three different lenders for the three transactions, with all three loan applications made at the same time, with closings scheduled a day or two apart, so that the three lenders would not find out about the multiple purchases. To persuade the lenders that Kuljanin could repay the loans, Radojcic put money into Kuljanin's account for a short time while the lenders went through the process for approval of the mortgage loans. For some other straw purchasers, Radojcic's corporations provided false verifications of employment to the mortgage lenders. After the banks approved the loans for Kuljanin, Kuljanin returned to Radojcic the money he had given her to inflate her bank account. Kuljanin received the three loans and gave the cash to Patterson, who kept it in a safe in Jewel Windows' offices. Radojcic used this elaborate process to obtain the loans because he needed to keep his name off of all documents related to the transactions. Patterson said Radojcic owed the United States Internal Revenue Service unpaid taxes of about $2 million.

¶ 7    Patterson testified that Helfand prepared documents needed to convert the apartments to condominiums, and then he prepared the deeds conveying the properties to the straw purchasers and from the straw purchasers to corporations Radojcic controlled.

¶ 8    Biljana Aranyos, who acted as a straw purchaser for eight condominiums, testified that her loan applications included false statements about her income and assets. She did not write the false statements. Someone working for Radojcic prepared the applications Aranyos signed. In May 2006, Patterson gave Aranyos $65,000 to deposit into Aranyos's account for a few days, and then Aranyos gave the money to a corporation Radojcic controlled. Although Aranyos went to seven of the eight closings, she knew nothing about the purchases. She did not find out the amounts of the mortgages until the closings.

¶ 9    The grand jury indicted Radojcic, Helfand, Patterson, and some others on a long list of charges, including theft, forgery, and financial institution fraud. The prosecutors included Helfand on the list of witnesses they intended to call to testify against Radojcic. Both Radojcic and Helfand objected on the basis of attorney-client privilege. In response to the objection, the prosecutor presented transcripts of the grand jury testimony and argued that the testimony of Patterson and Aranyos showed that the attorney-client privilege did not apply. The trial court found that the State had not met its burden of presenting a *prima facie* case for finding that Radojcic committed a crime and his communications with Helfand furthered the criminal enterprise. On that basis, the court sustained the objections of Helfand and Radojcic and struck Helfand's name from the list of witnesses. The State filed a certificate stating that the ruling substantially impaired its ability to prosecute Radojcic, and it filed a notice of appeal. Supreme Court Rule 604(a)(1) gives this court jurisdiction to hear

this appeal. Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006).

¶ 10                                    ANALYSIS
¶ 11                               Standard of Review
¶ 12     The parties disagree about the standard of review applicable to the trial court's ruling. Radojcic contends that we should review the evidentiary ruling for abuse of discretion, while the State maintains that we should review the ruling *de novo* because it involved the applicability of a privilege. Although federal courts have used the abuse of discretion standard in similar cases (*e.g.*, *United States v. BDO Seidman, LLP*, 492 F.3d 806, 814 (7th Cir. 2007)), Illinois courts have reviewed *de novo* decisions concerning the admissibility of evidence when a party claims attorney-client privilege. *People v. McRae*, 2011 IL App (2d) 090798, ¶ 25; *Cangelosi v. Capasso*, 366 Ill. App. 3d 225, 227 (2006). We will follow Illinois authority. Accordingly, we review *de novo* the legal issue of whether the trial court followed proper procedures when it considered the objection to the inclusion of Helfand's name on the list of witnesses. See *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998).

¶ 13            Procedures for Determining Whether Privilege Bars Testimony
¶ 14     In *In re Marriage of Decker*, 153 Ill. 2d 298 (1992), our supreme court set out the law pertaining to attorney-client privilege. Generally, clients have the right to prevent the disclosure in judicial proceedings of the communications between the attorney and the client. *Decker*, 153 Ill. 2d at 312. However, the client loses the privilege if he "seeks or obtains the services of an attorney in furtherance of criminal or fraudulent activity." *Decker*, 153 Ill. 2d at 313. The party seeking disclosure of the communications bears the burden of proving the client has lost the privilege. *Decker*, 153 Ill. 2d at 321. To defeat the privilege, the party seeking disclosure must show "that a prudent person ha[s] a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984), *quoted in Decker*, 153 Ill. 2d at 322. Often, only the communication itself can show that the privilege does not apply. *Decker*, 153 Ill. 2d at 322. In some such cases, when other evidence fails to show that the client has lost the privilege, the trial court may hear evidence *in camera* to determine whether the privilege applies. Before hearing evidence *in camera*, the judge should require the party seeking disclosure to show facts that would support a reasonable belief "that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989), *quoted in Decker*, 153 Ill. 2d at 324.

¶ 15     We recognize that the appellate court, in *Mueller Industries, Inc. v. Berkman*, 399 Ill. App. 3d 456, 470 (2010), apparently interpreted *Decker* to require a showing of probable cause to believe that the client committed a crime and his communications with his attorney furthered that crime before the court could hear evidence *in camera* about the communications between the attorney and the client. We find that the procedure delineated in *Mueller* does not comport with the language of *Decker*, especially where the court in *Decker* adopts the standard set in *Zolin*. Therefore, we follow *Decker*, and not *Mueller*, on

this procedural issue. As long as the party seeking to defeat the privilege has shown facts that support a reasonable belief that disclosure of the communications may prove the privilege does not apply, the court has discretion to hear evidence of those communications *in camera*. *Decker*, 153 Ill. 2d at 324.

¶ 16    Here, the trial judge found that the evidence apart from the communications with the attorney did not show that a prudent person would have a reasonable basis to suspect that those communications furthered the attempt to perpetrate crimes or fraud. The court simply omitted the next step, in which it should have determined whether the prosecution presented sufficient evidence to support a reasonable belief that the communications themselves could show that Radojcic lost the privilege by using the communications with Helfand to further his attempts to perpetrate crimes or fraud. We hold that the trial court erred when it struck Helfand's name from the list of witnesses, and excluded from evidence all communications between Radojcic and Helfand, without considering whether the evidence supported a reasonable belief that those communications might reveal that Radojcic lost the privilege.


¶ 17            Sufficiency of the Evidence to Show the Privilege Does Not Apply

¶ 18    Radojcic asks us to remand for the trial court to determine whether the court should hear testimony *in camera* and then decide whether that testimony suffices to meet the State's burden of showing that Radojcic lost the privilege. The State contends that the testimony of Patterson and Aranyos shows that a prudent person would have reason to suspect both that Radojcic attempted to commit crimes or fraud and that his communications with Helfand furthered that project. Thus, according to the State, we should reinstate Helfand as a witness and remand for trial.

¶ 19    To prove Radojcic guilty of loan fraud, the prosecutors need prove only that Radojcic knowingly participated in making false statements in loan applications with intent to defraud the financial institution. See *People v. Aguilar*, 366 Ill. App. 3d 341, 343-44 (2006); 720 ILCS 5/5-2(c), 16H-25, 16H-30 (West 2006). Both Patterson and Aranyos testified to Radojcic's extensive role in the use of false statements on loan applications so straw purchasers, including Aranyos, could obtain loans from various financial institutions. Both witnesses said Radojcic retained the loan proceeds. Radojcic and Helfand do not contest the sufficiency of the evidence to show reason to suspect Radojcic committed crimes and fraud.

¶ 20    Instead, Radojcic and Helfand argue that the State has not shown any reason to suspect that the communications between Radojcic and Helfand furthered the attempts to commit crimes or fraud. First, Radojcic points out that, according to Patterson, Patterson gave Helfand many of the instructions that he carried out. Patterson also testified that Radojcic told her what to tell Helfand, what to do to obtain loans, and what to do with the money once the lender gave it to the straw purchaser. Radojcic contends that the fact that Patterson spoke directly to Helfand shows that his own communications with Helfand did not further the crimes or fraud. We adopt the State's persuasive response to this argument.

¶ 21    Either Radojcic communicated with Helfand through Patterson or Patterson acted on her own when she told Helfand what to do. If Patterson spoke to Helfand on her own behalf, only she has the attorney-client privilege, and Radojcic cannot assert her privilege as grounds to

bar Helfand as a witness. See *People v. Adam*, 51 Ill. 2d 46, 48 (1972). Patterson waived her privilege by testifying to the grand jury about her discussions with Helfand. See *People v. Simms*, 192 Ill. 2d 348, 382 (2000). Thus, insofar as Patterson acted on her own, and not as a conduit for Radojcic's instructions, the trial court should permit the State to call Helfand as a witness to testify about his discussions with Patterson.

¶ 22    If Patterson merely acted as a conduit for Radojcic's instructions to Helfand, she either acted as Radojcic's agent or she acted as a third party, not an agent for Radojcic. If Patterson did not act as Radojcic's agent when she conveyed Radojcic's instructions to Helfand, then the privilege does not apply to the communications. "A defendant's voluntary disclosure of information, or other matters subject to being testified to, in the presence of *** any other third person who is not the agent of the defendant or his attorney is not privileged." *Simms*, 192 Ill. 2d at 382. Again, if Patterson did not act as Radojcic's agent, the trial court should permit the State to call Helfand as a witness to testify about the nonprivileged communications he received through Patterson, insofar as those communications have any bearing on the charges against any of the defendants.

¶ 23    If Patterson acted as Radojcic's agent, then the communications with Helfand count, for purposes of the attorney-client privilege, exactly as though Radojcic spoke the words himself. See *Lama v. Preskill*, 353 Ill. App. 3d 300, 306 (2004). Thus, the court must look to those communications to determine whether Radojcic has lost the attorney-client privilege by using his communications with Helfand to further the crimes or fraud.

¶ 24    Patterson testified that, at Radojcic's behest, Helfand prepared the legal documents for converting the apartment buildings to condominiums, for the sales to straw purchasers, and for the resales from the straw purchasers to the corporations Radojcic controlled. Without the condominium conversions, the straw purchasers could not have purchased the units, and therefore they could not have obtained the mortgage loans. Without the sales documents and the closings of the sales, the banks would not have loaned the straw purchasers the money. Thus, Helfand's work helped complete the crime of obtaining the loans from the financial institutions by means of falsified loan applications. The communications with Helfand, and Helfand's work in accord with the instructions, helped with the commission of the crimes even if Helfand did not know about the falsified loan applications and even if Helfand did not himself commit any crime or fraud. See *Radiac Abrasives, Inc. v. Diamond Technologies, Inc.*, 177 Ill. App. 3d 628, 635 (1988). We find that Patterson's testimony provides a reasonable person with a reasonable basis to suspect that the communications with Helfand delineating instructions for the preparation of documents needed to receive the loans furthered the crimes and fraud. Therefore, applying the test set out in *Decker*, we find that the State has presented sufficient evidence to show that the attorney-client privilege does not prevent Helfand from testifying about his communications with Radojcic and the acts he took in following Radojcic's instructions. Accordingly, we reverse the trial court's decision and remand for a trial at which the prosecution may call Helfand as a witness.

¶ 25                                    CONCLUSION
¶ 26    Before striking Helfand from the witness list, the trial court should have addressed the

issue of whether the State presented sufficient evidence to support a reasonable belief that the communications between Radojcic and Helfand might show that Radojcic used the communications to advance his attempts to perpetrate crimes or engage in fraudulent activity. On *de novo* review of the court's decision, we find that the evidence shows that Radojcic used his instructions to Helfand to further his attempts to commit crimes or engage in fraudulent activity. Therefore, the trial court erred when it struck Helfand's name from the list of witnesses. Accordingly, we reverse the trial court's decision and remand for trial.

¶ 27    Reversed and remanded.