SIXTH DIVISION

December 20, 2002

No. 1-02-0575

STERLING FINANCE MANAGEMENT, L.P.,

Plaintiff-Appellee,

v.

UBS PAINEWEBBER, INC.,  

Defendant-Appellant

(Robert S. West, Defendant).

)))))))))))

Appeal from the

Circuit Court of

Cook County

97 L 11843

Honorable

Allen S. Goldberg

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant, UBS PaineWebber, Inc. (Paine Webber), appeals from an order of the circuit court holding it in contempt of court for refusing to produce certain documents demanded by plaintiff, Sterling Finance Management, L.P. (Sterling), during discovery.  PaineWebber was assessed a fine of $500 for its refusal to comply with the court's order.  For the reasons that follow, we affirm the judgment of the trial court that the materials at issue are not protected by the attorney-client privilege.  We vacate the order of contempt.

JURISDICTION

This court has jurisdiction over this appeal, which was properly filed pursuant to Illinois Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)).  A contempt proceeding is an appropriate method for a party to test the correctness of an otherwise unreviewable pretrial discovery order. 
Lewis v. Family Planning Management, Inc.
, 306 Ill. App. 3d 918, 715 N.E.2d 743 (1999).  

BACKGROUND

Only a brief summary of the nature of the underlying case is necessary for background purposes.  On August 9, 1999, Sterling sued PaineWebber
(footnote: 1) for alleged misrepresentations made in connection with Sterling's purchase of mortgage-backed securities from PaineWebber.  Sterling's complaint included allegations of fraudulent concealment, intentional misrepresentation, negligent misrepresentation, breach of fiduciary duty, violations of the Illinois Securities Law of 1953 (815 ILCS 5/1 
et seq
. (West 1998)), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act 
(815 ILCS 5/505 
et seq
. (West 1998))
, breach of a written contract, and breach of an oral agreement - all of which Sterling alleged resulted in its losing more than $15 million.

The documents and communications at issue in this appeal involve reports prepared by PaineWebber's outside counsel, New York attorney Robert Mendelson (Mendelson reports), and a memorandum with supporting papers prepared by PaineWebber's employee Terry Ann Goulard (Goulard memorandum).  On January 19, 1996, PaineWebber's employee Allen Meyer, capital markets compliance counsel, retained Mr. Mendelson to conduct a review of PaineWebber's CMO (collateralized mortgage obligations) residual business.  Mendelson conducted a review of the residuals desk in order to perform his analysis of legal and compliance issues pertaining to residuals.  On September 30, 1996, Mendelson provided a report, entitled "Report Regarding PaineWebber Incorporated's CMO Residual Training and Sales Practices."  As a result of further discussions with PaineWebber's in-house counsel, Mendelson issued a modified report on February 17, 1997.  

In the fourth quarter of 1997, after receiving the Mendelson reports, PaineWebber's legal department asked PaineWebber's management audit and controls group, its internal audit function, to review the CMO residual trading and sales desk to evaluate the desk's procedures as compared to the recommendations set forth in the Mendelson report.  Terry Ann Goulard, group manager of the management audit and controls group, performed the review.  On March 16, 1998, Goulard furnished Gerard Citera, deputy general counsel of PaineWebber, with a draft memorandum and accompanying work papers (Goulard memorandum) reflecting this review.  The Goulard memorandum set forth Mr. Mendelson's legal advice regarding various aspects of PaineWebber's residuals business and, in many instances, included verbatim quotations from the Mendelson report.  For each item of legal advice from Mendelson, the Goulard memorandum listed observations of the desk's procedures relating to that advice.

During the discovery process, several disputes arose.  PaineWebber repeatedly refused to turn over documents.  One of the disputes, relevant to this appeal, occurred on October 17, 2001, during the deposition of one of PaineWebber's employees named Ramesh Singh - which the trial judge took the extraordinary step of personally attending via video conference.  Sterling's counsel asked Singh what he knew about a 1996 investigation into the conduct of one of PaineWebber's traders in its mortgage-backed securities department.  PaineWebber's counsel objected and refused to allow the witness to answer on the ground that the questions called for information protected by the attorney-client privilege.  PaineWebber's counsel requested an opportunity to brief the privilege issue.  Subsequently, however, despite insisting on briefing the propriety of its privilege objections, and despite Sterling's reminder to address them, PaineWebber failed to do so in its briefs submitted to the trial court.  Instead, PaineWebber addressed only its refusal to produce the Mendelson report and the Goulard document and ignored the deposition objections.  

On January 14, 2002, after briefing, oral argument and an 
in camera
 inspection of the withheld documents, the circuit court rejected PaineWebber's privilege argument and entered an order denying PaineWebber's motion to affirm the attorney-client privilege.  The court ordered PaineWebber to produce the withheld documents and further ordered that the witness reappear for a deposition to answer those questions that had previously been objected to by PaineWebber.  On January 22, 2002, the court entered an order holding PaineWebber in indirect civil contempt after PaineWebber informed the court that, for the purpose of seeking review of this otherwise unappealable discovery order, it would respectfully not comply.  In this appeal, PaineWebber asserts that the trial court incorrectly determined that the documents and communications were not protected by the attorney-client privilege.  Specifically, PaineWebber claims that the court should have applied New York law when deciding whether the materials were privileged, and further contends that these materials are privileged under New York law.

STANDARD OF REVIEW

PaineWebber has not included the standard of review in its briefs.  Generally, rulings on discovery matters are reviewed under an abuse of discretion standard. 
Maxwell v. Hobart Corp.,
 216 Ill. App. 3d 108, 110, 576 N.E.2d 268, 270 (1991).  A trial court, however, lacks the discretion to compel the disclosure of information that is privileged. 
In re Marriage of Daniels
, 240 Ill. App. 3d 314, 324, 607 N.E.2d 1255, 1261 (1992).  Nonetheless, because privileges are designed to protect the interests that are outside the truth-seeking process, they are strictly construed as an exception to the general duty to disclose. 
Daniels
, 240 Ill. App. 3d at 324-25, 607 N.E.2d at 1262.  Generally, the applicability of a statutory evidentiary privilege, and any exceptions thereto, is a matter of law subject to 
de novo 
review. 
Norskog v. Pfiel
, 197 Ill. 2d 60, 70-71, 755 N.E.2d 1, 9 (2001).  Courts have applied a 
de novo
 standard of review in deciding the applicability of the attorney-client privilege. 
Hayes v. Burlington Northern & Santa Fe Ry. Co., 
323 Ill. App. 3d 474, 477, 752 N.E.2d 470, 473 (2001); 
Midwesco-Paschen Joint Venture for the Viking Projects v. IMO Industries, Inc.,
 265 Ill. App. 3d 654, 660, 638 N.E.2d 322, 326 (1994).  This court has also applied the 
de novo
 standard of review to the trial court's decision on a choice-of-law issue. 
Household International, Inc. v. Liberty Mutual Insurance Co.
, 321 Ill. App. 3d 859, 749 N.E.2d 1, 9 (2001).  Our review is 
de novo.

DOES A CONFLICT EXIST?

PaineWebber's primary issue raised on appeal is "whether Illinois choice-of-law rules require that New York law be applied when determining whether the communications and documents at issue are protected by the attorney-client privilege." While the question implies that there is a conflict between Illinois law and New York law, PaineWebber has neglected to articulate clearly whether there is a conflict.
(footnote: 2)  As Sterling correctly notes, it was PaineWebber's responsibility to explain why it mattered whether Illinois law rather than New York law was applied by explaining the germane features of New York law (with citation of authority) and how that law conflicts with Illinois law.  Before this court undertakes a choice-of-law analysis to determine which state's law governs a claim, we must look to see whether a conflict exists.  This is a threshold question because choice-of-law considerations are not implicated unless there is an actual conflict in the law of the two states. 
Household International, Inc. v. Liberty Mutual Insurance Co.
, 321 Ill. App. 3d 859, 868, 749 N.E.2d 1, 8 (2001); 
Malatesta v. Mitsubishi Aircraft International, Inc.
, 275 Ill. App. 3d 370, 374, 655 N.E.2d 1093, 1096 (1995).  A conflict exists when the application of one state's law over another will make a difference in the outcome.  
 
Malatesta v. Mitsubishi Aircraft International, Inc.
, 275 Ill. App. 3d at 374, 655 N.E.2d at 1096
.  If the law of the jurisdictions in question is essentially the same on the disputed issue, there is no need to apply a choice-of-law analysis. 
Wreglesworth v. Arcto, Inc.
, 316 Ill. App. 3d 1023, 1028, 738 N.E.2d 964, 969 (2000).  Moreover, if there is no conflict, Illinois law applies as the law of the forum. 
Dearborn Insurance Co. v. International Surplus Lines Insurance Co.
, 308 Ill. App. 3d 368, 373, 719 N.E.2d 1092, 1096 (1999).  Thus, we must decide whether there is a conflict in the laws of the two states regarding the attorney-client privilege.

In the typical choice-of-law case involving a privilege, the conflict is undeniable because one state has a privilege that is nonexistent in the other state.  Here, it is undisputed that both Illinois and New York recognize the attorney-client privilege generally, as well as specifically, for corporations.  It is the potential difference in the scope of the corporate attorney-client privilege that arguably creates a conflict.  Therefore, the comparison of the substantive law of each state is more involved than merely comparing the existence versus the nonexistence of a privilege.  Our analysis necessarily involves a consideration of how each jurisdiction has defined the scope of the privilege and a determination of whether New York applies its corporate attorney-client privilege in the same way Illinois does.  We must undertake this analysis in the context of the case before us in order to assess whether any difference in the scope of the privilege would have an impact on the particular facts of this case, 
i.e.
, whether the difference would be outcome determinative.

JURISDICTIONAL APPLICATIONS OF THE CORPORATE ATTORNEY-CLIENT PRIVILEGE

As discussed by our supreme court in 
Consolidation Coal Co. v. Bucyrus-Erie Co.
, 89 Ill. 2d 103, 432 N.E.2d 250 (1982), various tests have been used by jurisdictions in deciding the question of who speaks for a corporation on a privileged basis.  The control group test "focuses on the status of the employee within the corporate hierarchy." 
Consolidation Coal
, 89 Ill. 2d at 114, 432 N.E.2d at 255.  Broader tests, including the so-called "subject matter" test, "focus on why an attorney was consulted rather than with whom he communicated." 
Consolidation Coal
, 89 Ill. 2d at 
115
, 432 N.E.2d at 
255
.  The United States Supreme Court has rejected the control group test as the governing test in federal courts. 
Consolidation Coal
, 89 Ill. 2d at 112-13, 432 N.E.2d at 254, citing 
Upjohn Co. v. United States, 
449 U.S. 383, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981).

ILLINOIS APPLIES CONTROL GROUP TEST

Despite the 
Upjohn
 decision, Illinois reaffirmed the control group test in 
Consolidation Coal Co. v. Bucyrus-Erie Co.
, 89 Ill. 2d 103, 432 N.E.2d 250 (1982).  As our supreme court held, not every communication made to a corporation's attorney by an employee of the corporation is privileged but, rather, the corporation attorney-client privilege applies only to those employees within the control group. 
Consolidation Coal Co. v. Bucyrus-Erie co.
, 89 Ill. 2d 103, 432 N.E.2d 250 (1982).  In addition to top management, the 
Consolidation Coal
 court also included within the control group any employee "whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority."  
Consolidation Coal
, 89 Ill. 2d at 120, 432 N.E.2d at 258.  Thus, Illinois law is clear that the control group test is used to determine whether the corporate attorney-client privilege applies to a communication.  Before we discuss New York law, we shall first complete our examination of Illinois law by discussing what the outcome would be if Illinois law is applied here in determining whether the communications and documents at issue are protected by the attorney-client privilege.

COMMUNICATIONS HERE ARE NOT PRIVILEGED UNDER ILLINOIS'S CONTROL GROUP TEST

In the present case, the controlling factor in the trial court's decision that the Goulard memorandum was not protected by the attorney-client privilege was its conclusion that, under Illinois law, Goulard is not a member of the control group.
(footnote: 3)  In a jurisdiction that does not follow the control group test, however, this factor might not be dispositive.  Thus, it is this very factor that creates, in the first instance, the potential conflict between Illinois and New York law that would be outcome determinative.

DOES NEW YORK FOLLOW CONTROL GROUP TEST?

The next step in our analysis is to determine whether a conflict exists between Illinois law and New York law.  If New York follows the control group test, no conflict would exist between its law and that of Illinois.  On the other hand, if New York does not follow the control group test or uses an alternative approach under which the communications might be privileged, then a true conflict would exist.  Whereas Illinois law is clear and explicit on this issue, New York law is not so clear.

In 
Niesig v. Team I
, 76 N.Y.2d 363, 558 N.E.2d 1030
, 559 N.Y.S.2d 493 (1990), the Court of Appeals cited 
Upjohn
 and, in 
dictum
, stated: "[a]s the Supreme Court 
recognized
, a corporation's attorney-client privilege includes communications with low- and mid-level employees.” 
(Emphasis added.) 
Niesig
, 76 N.Y.2d at 371, 558 N.E.2d at 1033-34,
 559 N.Y.S.2d at 496-97
.  The 
Niesig
 court, however, noted the distinction between the scope of the 
ex parte
 contact rule at issue and the attorney-client privilege.  Although the 
Niesig
 court 
did reject the control group test, it was in the context of determining whether opposing counsel could have 
ex parte
 contact with a corporate party's employees as it related to the interpretation of the ethical rules governing attorney conduct.  
Thus, PaineWebber's assertion that 
Niesig
 stands for the proposition
 
that “New York has rejected application of the control group test to corporate communications” is not completely accurate.
  One commentator has noted as follows:

"Among the fifty states, there are a number of competing tests for determining the applicability of the attorney-client privilege in the corporate context, and the issue, despite 
Upjohn
, is far from settled.  Most states have not adopted 
Upjohn
 explicitly, although some, such as Colorado, have.  Other states, such as Illinois, have rejected 
Upjohn
 altogether and adopted the control group test to determine which employees' communications to corporate counsel are protected by the privilege.  The majority of states, 
like New York
, have yet to decide which standard, if either, will apply.”  (Emphasis added.) B. Hamilton, 
Conflict, Disparity, and Indecision: The Unsettled Corporate Attorney-Client Privilege
, 1997 Ann. Surv. Am. L. 629, 630 (1997).

The attorney-client privilege has been codified in section 4503 of New York's Civil Practice Law and Rules (N.Y.C.P.L.R. §4503 (McKinney 1992)).  The Practice Commentaries to that statute note as follows:

"An unresolved issue in New York is whose communications within the corporate hierarchy fall within the corporation's privilege.  Federal courts evolved essentially two approaches to the matter.  The more restrictive of the two is the 'control group' standard ***. ***

***

*** There are no New York cases that have expressly adopted one approach or the other. ***

A hint that the Court of Appeals may be more favorably inclined toward 
Upjohn
 than to the control group standard is contained in [
Niesig
].  The issue in 
Niesig
 was one of legal ethics: Which employees of a corporate party fall within DR 7-104(A)(1)'s prohibition against ex parte communications with a party represented by counsel?  The Court rejected a control group standard, holding that a corporation's adversary could not conduct ex parte interviews of any current employees of the corporation 'whose acts or omissions in the matter under inquiry are binding on the corporation ... or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel.' [Citation.]  The attorney-client privilege and DR 7-104(A)(1) address different problems, of course, but 
Niesig
 reflects a generally protective attitude by the Court toward corporate interests." N.Y.C.P.L.R. §4503, Practice Commentaries, at 578-79 (McKinney 1992).

That same commentator, together with another, later noted:

"The New York Court of Appeals has never squarely addressed the issue, but the trend of the cases reveals an expansive attitude toward the attorney-client privilege in the corporate context.  This expansive attitude was also reflected in a decision of the New York County Supreme Court, which held that counsel's communications with a former employee of a corporate client, in this case the City of New York, can fall within the entity's privilege." R. Barker & V. Alexander, 5 N.Y. Prac. Evidence in New York and Federal Courts §5:8 (October 2002).

Though not authoritative, we find that these commentaries accurately explain New York law in terms of the control group test.

Based on the uncertainty of New York law, and its rejection of the control group test in a different context, we believe it prudent to consider that an actual conflict may exist between New York and Illinois law and undertake a choice-of-law analysis.

ILLINOIS CHOICE-OF-LAW RULES

Having determined that a true conflict exists in the instant case, we apply Illinois choice- of-law rules to determine which state's law applies here. See,
 e.g.
, 
Boersma v. Amoco Oil Co.
, 276 Ill. App. 3d 638, 645, 658 N.E.2d 1173, 1180 (1995).  
The choice-of-law issue regarding the attorney-client privilege with which we are presented is a case of first impression.
(footnote: 4)  PaineWebber urges this court to apply Section 139(2) of the Restatement (Second) of Conflict of Laws (1971) to this dispute.  Sterling, citing numerous federal cases which we find unpersuasive, contends that under the choice-of-law question presented here, Illinois courts should resolve disputes over the applicability of the attorney-client privilege in accordance with Illinois privilege law.  Sterling additionally incorrectly asserts that there is a distinction between the application of the attorney-client privilege at trial as opposed to during the discovery process.

With respect to Sterling's latter contention, Sterling urges the application of section 127 of the Restatement (Second) of Conflict of Laws, which states, in pertinent part, that: "[t]he local law of the forum governs, among other things *** pre-trial practice, including the taking and use of depositions, discovery and penalties for refusal to comply with proper request for information [.]" Restatement (Second) of Conflict of Laws §127, Comment 
a
(5) (1971).  Sterling argues that section 139 of the Restatement urged by PaineWebber pertains to the admissibility of evidence 
during trial
, and asserts that there is a distinction between the privilege issue in the discovery context versus the trial context.  Sterling cites one case from another jurisdiction in support of its argument, namely 
Kessel v. Leavitt, 
204 W. Va. 95, 511 S.E.2d 720 (1998).  In 
Kessel
, a West Virginia court applied section 127 to the attorney-client privilege, but did so without any real analysis of that particular issue.  Moreover, the distinction claimed by Sterling is at odds with the very definition of a privilege based upon the express language of Illinois Supreme Court Rule 201(b)(2), which states, in relevant part:

"All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, 
are privileged against disclosure through any discovery procedure
.  Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." (Emphasis added.)  166 Ill. 2d R. 201(b).  

We conclude that Sterling's argument is meritless.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS SECTION 139

The Illinois Supreme Court in 
Consolidation Coal
 provided us with clear guidance as to how we must construe the attorney-client privilege under Illinois law.  Nevertheless, no Illinois case (apart from the vacated appellate court opinion in 
Consolidation Coal
) has specifically addressed section 139 of the Restatement (Second) of Conflict of Laws.  However, Illinois courts 
have
 adopted the rules of the Restatement (Second) of Conflict of Laws (1971) in other cases. See 
Champagnie v. W.E. O'Neil Construction Co.
, 77 Ill. App. 3d 136, 395 N.E.2d 990 (1979) (contract case); see also 
Ingersoll v. Klein
, 46 Ill. 2d 42, 262 N.E.2d 593 (1970) (tort case); 
Ford v. Newman
, 64 Ill. App. 3d 528, 381 N.E.2d 392 (1978) (trust case).  Also, as the Illinois Supreme Court has stated: "Ordinarily, Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions." 
Morris B. Chapman & Associates, Ltd. v. Kitzman
, 193 Ill. 2d 560, 568, 739 N.E.2d 1263, 1269 (2000).  We conclude that section 139 of the Restatement (Second) of Conflict of Laws is the proper starting point for the choice-of-law rules to resolve the issue of admissibility of certain information and documents upon which a privilege is claimed. See Restatement (Second) of Conflict of Laws §139 (1971); but see S. Bradford, 
Conflict of Laws and The Attorney Client Privilege: A Territorial Solution
, 52 U. Pitt. L. Rev. 909 (1991) (criticizing this approach, as well as all of the existing choice-of-law approaches, as applied to the attorney-client privilege.)

PaineWebber asserts that the trial court should have applied New York privilege law because, under section 139 of the Restatement (Second) of Conflict of Laws, New York is the state with the most significant relationship to the documents and communications at issue.  According to the Restatement (Second) of Conflict of Laws, the state with the most significant relationship with the communication "will usually be the state where the communication took place, which *** is the state where an oral interchange between persons occurred, where a written statement was received or where an inspection was made of a person or thing."  Restatement (Second) of Conflict of Laws §139, Comment 
e
 at 389 (1971).  We agree with PaineWebber that, according to this provision of the Restatement, New York is the state with the most significant relationship to the communication.  The law of the state with the most significant relationship, however, does not necessarily govern the admissibility issue.  Section 139 of the Restatement (Second) of the Conflict of Laws also states, in relevant part, as follows:

“(2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum 
will be admitted 
unless there is some special reason why the forum policy favoring admission should not be given effect.”(Emphasis added.)  Restatement (Second) of Conflict of Laws §139(2)(1971).

Comment 
d
 to subsection 139(2) acknowledges the "strong policy" a forum state has in disclosing "all relevant facts that are not privileged under its own local law." Restatement (Second) of Conflict of Laws §139, Comment 
d
 at 387 (1971).  Therefore, under section 139(2), a forum state 
will
 admit evidence that is not privileged under its local law, 
unless
 it finds that the local policy favoring admission is outweighed by countervailing considerations, 
i.e.
, some "special reason." Comment 
d
 provides guidance as what factors a court should consider in determining whether a special reason exists to admit evidence that is not privileged in the forum state, but which is privileged in the state with the "most significant relationship."  Those factors include the following:

(1) the number and nature of the contacts that forum state has with the parties and the transaction involved;

(2) the relative materiality of the evidence sought to be excluded;

(3) the kind of privilege involved; and

(4) fairness to the parties.

See Restatement (Second) of Conflict of Laws §139, Comment
 
d
, at 387 (1971).  We have considered the parties' arguments pertaining to these countervailing considerations.  We conclude that there is no special reason 
why Illinois's strong policy favoring discoverability should not be given effect.

As our supreme court explained:

"The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information. [Citations.] Under some circumstances, however, the privilege poses an absolute bar to the discovery of relevant and material evidentiary facts, and in the corporate context, given the large number of employees, frequent dealing with lawyers and masses of documents, the 'zone of silence grows large'. [Citation.] That result, in our judgment, is fundamentally incompatible with this State's broad discovery policies looking to the ultimate ascertainment of the truth [citations] which we continue to find essential to the fair disposition of a lawsuit. [Citation.] Its potential to insulate so much material from the truth-seeking process convinces us that the privilege ought to be limited for the corporate client to the extent reasonably necessary to achieve it purpose."  
Consolidation Coal Co. v. Bucyrus-Erie Co.
, 89 Ill. 2d at 117-18, 432 N.E.2d at 256-257.

In view of the fact that Illinois does recognize the privilege, in the first instance, but construes it strictly in the corporate context, we cannot foresee any situation where a special reason would exist not to give effect to this clear, strongly articulated policy in favor of another state's broader corporate attorney-client privilege.  We conclude that Illinois law governs the attorney-client privilege issue here.  The trial court properly applied Illinois law and correctly concluded that, under Illinois law, the materials at issue are not protected by the attorney-client privilege.

As the trial court additionally noted, with respect to the Mendelson report, its distribution to Goulard destroyed any privilege that existed.  Distribution of otherwise privileged materials to individuals outside the corporation's control group destroys the privilege. 
Midwesco-Paschen Joint Venture For Viking Projects v. IMO Industries
, 
Inc.
, 265 Ill. App. 3d at 664, 638 N.E.2d at 329.  We affirm the order of the trial court denying PaineWebber's motion to affirm the attorney-client privilege and ordering PaineWebber to produce the withheld documents.

We further note, in addition to determining that the attorney-client privilege was inapplicable to the documents that PaineWebber refused to produce, the court admonished PaineWebber.  The court stated as follows:

"First, as a threshold matter, this court fails to understand why [PaineWebber] has completely failed to address in its brief the issue which was the genesis of this motion; the validity of the privilege objections made in Mr. Singh's deposition.  That is, counsel for [PaineWebber] specifically made a request to this court for an opportunity to address why Ramesh Singh should not have to answer questions relating to alleged investigations into the practices of Mr. Ramsden and the mortgage backed securities department. * * * Mr. Singh's name, however, is nowhere mentioned in [PaineWebber's] brief, and no reference is made to the privilege objections.  While [PaineWebber] certainly stated at the Singh deposition that it had been planning to bring a motion regarding the claimed attorney-client privilege, this Court expected that the issue of defense counsel's basis for instructing Mr. Singh not to address the particular questions put to him at the deposition, at which this court was present, would be addressed.  It was not." 

The trial court ordered that, "Mr. Singh, shall reappear for a deposition in this court or at another place agreed to by the parties, and at a time convenient for the Court, for a maximum of one hour, within 28 days in order to answer the questions improperly objected to by PaineWebber."

The attorney-client privilege protects only the communication itself; opposing counsel is free to question a member of the control group about the underlying facts that were 
communicated. 
Claxton v. Thackston
, 201 Ill. App. 3d 232, 559 N.E.2d 82, 87 (1990); see also 
Niesig v. Team I
, 76 N.Y.2d 363, 372, 559 N.Y.S.2d 493, 497, 
558 N.E.2d 1030, 1034
 (1990), citing 
Upjohn v. United States
, 449 U.S. at 395-96, 66 L. Ed. 2d at 595, 101 S. Ct. at 685-86. ("First, the privilege applies only to confidential communications with counsel ***, it does not immunize the underlying factual information – which is in issue here – from disclosure to an adversary").

Since we agree with the trial court's decision that the attorney-client privilege is inapplicable, we conclude that the trial court correctly ordered Mr. Singh to reappear to answer the questions that were improperly objected to by PaineWebber's counsel.

PaineWebber also attempts to raise a constitutional issue.  We agree with Sterling that the issue is waived for the reasons stated in Sterling's brief.

Because the trial court entered the contempt order at PaineWebber's request, which we have explained is the proper procedure to test on appeal a circuit court's discovery order, we conclude that PaineWebber's conduct was not contumacious.  Accordingly, we vacate the contempt order.  We affirm the decision of the circuit court denying PaineWebber's motion to affirm the attorney-client privilege, including the circuit court's order to produce immediately the documents that were the subjects of the motion and the court's order that Mr. Singh reappear for deposition.

Order to produce documents is affirmed; contempt order vacated; and cause remanded.

O'BRIEN, P.J. with O'MARA FROSSARD, J. concurring.

FOOTNOTES
1:
Also named as a defendant was Robert S. West, who is not a party to this appeal.

2:
Practically speaking, we recognize that PaineWebber obviously perceives a conflict that inures to its benefit under the application of New York law, in view of PaineWebber's urging of the court to apply New York law.

3:
Although PaineWebber conceded during oral argument that the documents were not privileged under Illinois's control group test, it failed to make its position clear in its written briefs.  Indeed, in addition to its contention that the materials are privileged under New York law, PaineWebber had apparently attempted to argue that the materials are also privileged under Illinois law.  It did so in the portion of its reply brief entitled "Ms. Goulard's Position and the Facts Surrounding the Goulard Documents."  Moreover, it did so in response to Sterling's argument that the documents are not privileged under Illinois law because Goulard is not within the control group - a requirement under Illinois law.  PaineWebber failed to argue that its contentions had any relevance to New York law.  Thus, while contending that New York law applies and that New York has rejected the control group test, PaineWebber nonetheless makes a belated attempt to argue that the materials are 
also
 privileged under Illinois law.  It appears that PaineWebber's argument that the documents are also privileged under Illinois law, which was not presented in the alternative, is included as a fallback position, should this court agree with the trial court's decision to apply Illinois law.  As Sterling correctly noted in its response brief, however, when PaineWebber finally reached the merits of the privilege issue in its opening brief, it contended 
only
 that New York law protects the withheld information from disclosure; it did not argue that the information was privileged under Illinois law.  As a result, PaineWebber has waived any argument that the trial court, after concluding Illinois law was applicable, 
thereafter
 erred in its analysis of Illinois law.  Nevertheless, by taking issue, in its reply brief, with Sterling's argument
 that Goulard is not a member of the control group,
 PaineWebber effectively asked this court to
 consider this issue.
  Not only did PaineWebber fail to concede this point prior to oral argument, but it also failed to cite or distinguish any of the cases relied upon by the trial court
.  
This court continually “has reminded counsel that a reviewing court is entitled to have issues clearly defined with relevant authority cited and a cohesive legal argument presented because the appellate court is not a depository in which the appellant may dump the burden of argument and research.”
 Wortel v. Somerset Industries, Inc.,
 
331 Ill. App. 3d  895, 908,
 770 N.E.2d 1211, 1221 (2002).

4:
The issue was addressed by the appellate court in 
Consolidation Coal
.  That opinion was later vacated by the Illinois Supreme Court.  
Consolidation Coal Co. v. Bucyrus-Erie Co.
, 89 Ill. 2d 103, 432 N.E.2d 250 (1982).  The supreme court did not comment upon the appellate court's analysis.  Also, after determining that the choice-of-law issue was no longer before it, the court did not further address the issue.