# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Janousek v. Slotky*, 2012 IL App (1st) 113432**

| | |
|---|---|
| Appellate Court Caption | JAMES JANOUSEK, Individually and on Behalf of Bureaus Investment Group, LLC, Plaintiff-Appellee, v. MICHAEL SLOTKY, BUREAUS INVESTMENT GROUP, LLC, and BUREAUS INVESTMENT GROUP III, LLC, Defendants-Appellants (Burton Slotky, Defendant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-3432 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed<br>Rehearing denied | September 20, 2012<br><br>October 1, 2012<br>October 25, 2012<br>November 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When defendants, the majority members of a limited liability company excluded plaintiff, a minority member, from management and formed a competing company, plaintiff sued on his behalf for an accounting, breach of fiduciary duties, and a violation of the Limited Liability Company Act, and the discovery order entered pursuant to plaintiff's request for documents was upheld over defendants' contention the documents were protected by the attorney-client privilege. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-22216; the Hon. Stuart E. Palmer, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded. |

Counsel on
Appeal

Martin F. Tully, David F. Benson, and Dara Chevlin Tarkowski, all of Katten Muchin Rosenman, LLP, and Genevieve M. Daniels, of GMD & Partners, Ltd., both of Chicago, for appellants.

Thomas Kanyock, Andrew R. Schwartz, and Karen Jeffreys, all of Schwartz & Kanyock, LLC, of Chicago, for appellee.

Panel

PRESIDING JUSTICE LAVIN delivered the judgment of the court.

Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1     This case arises from a dispute between members of Bureaus Investment Group, LLC (BIG), a member-managed limited liability company (LLC). James Janousek, the minority (40%) member, essentially contends that the majority members, Michael Slotky and his father Burton Slotky, excluded Janousek from the management of BIG and formed a competing company, Bureaus Investment Group III, LLC (BIG III). Janousek's assertions in the trial court rested on allegations pled in the alternative that he either was, or was not, currently a member of BIG. In contrast, defendants unequivocally maintained in their verified pleadings that Janousek remained a member of BIG. Nonetheless, they objected to certain discovery requests on the basis that the records and communications requested by Janousek were privileged because Janousek had not shown that he was still a member of BIG, and thus, was not entitled to such items. This interlocutory appeal arises from the trial court's order holding certain defendants in civil contempt for refusing to comply with the court's order to disclose those items. On appeal, defendants assert that the trial court erred in requiring them to disclose such documents because they were protected by the attorney-client privilege. We affirm the discovery order and vacate the order holding defendants in contempt.

¶ 2     Janousek, individually and on behalf of BIG, commenced this action against the Slotkys and BIG III on July 7, 2009. Janousek's complaint also sought relief, solely on his own behalf, against BIG in the event that he was found to no longer be a member of BIG. Accordingly, BIG's interests in these proceedings are being represented by two different attorneys: the first being Janousek's attorney, who was retained to file a complaint on behalf of BIG, and the second being the attorney representing BIG as a defendant. In addition, Katten Muchin Rosenman, LLP (Katten), originally represented the Slotkys, BIG III and BIG. On February 17, 2009, however, the trial court found that Katten was disqualified from representing BIG because its dual representation of defendants resulted in a conflict of interest, as BIG (through Janousek) had asserted a claim against the Slotkys and BIG III. An

attorney formerly associated with Katten thereafter filed an appearance on BIG's behalf.

¶ 3    Ultimately, on September 13, 2011, Janousek filed a second-amended verified complaint setting forth causes of action for accounting, breach of fiduciary duties, violation of the Illinois Limited Liability Company Act (the Act) (805 ILCS 180/1-1 (West 2010)), breach of contract and fraud. The complaint also sought a declaratory judgment concerning Janousek's status and rights in BIG and injunctive relief. Janousek alleged that in 1999, the Slotkys hired him to be the president of their family's debt collection agency, The Bureaus, Inc. (TBI). In the same year, Janousek and the Slotkys formed BIG for the purpose of investing in portfolios of delinquent debt accounts. Katten filed BIG's articles of organization on March 24, 1999, and drafted BIG's operating agreement, which Janousek and the Slotkys signed on August 1, 1999. Janousek, who had a 40% interest in BIG, managed BIG's accounts through his position as president of TBI.

¶ 4    The complaint alleged that on September 30, 2007, however, the Slotkys signed a resolution on behalf of BIG, giving Michael the sole power to manage BIG. In addition, the complaint pled in the alternative that Janousek either voluntarily dissociated from BIG or that the Slotkys wrongfully dissociated him from BIG on October 1, 2007. Specifically, the complaint alleged that on that date, the Slotkys terminated Janousek's employment at TBI, changed the locks and alarm codes to BIG's business premises and from that day forward, prevented Janousek from exercising his membership rights in BIG, including management rights, voting rights and access to financial information. The complaint also alleged that on that date, Janousek demanded that the Slotkys purchase Janousek's interest in BIG, thereby giving them notice of his express will to withdraw from BIG. The Slotkys demurred. Meanwhile, with assistance from Katten, the Slotkys formed BIG III on October 22, 2007, to invest in portfolios of delinquent debt accounts and began investing in the same month. The complaint further alleged that in contrast, BIG had not purchased any pools of delinquent debt, except to the extent required by prior contracts, since October 1, 2007.

¶ 5    Attached to the complaint was the resolution, signed solely by the Slotkys, that essentially granted Michael the sole authority to conduct BIG's business. Also attached were BIG's articles of organization and its operating agreement. The operating agreement states, among other things, that BIG is member managed and that membership rights include the "right to inspect the Company's books and records," and the "right to participate in the management of and vote on matters coming before the Company." Furthermore, the operating agreement requires that a majority of members keep "complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of the Company's business" and requires that the books and records "be maintained in accordance with sound accounting principles and practices and shall be available at the Company's principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours."

¶ 6    As stated, in all of their pleadings that followed, defendants consistently took the firm position that plaintiff was still a member of BIG. Specifically, in September 2011, the Slotkys, BIG III and BIG filed separate verified answers to the second-amended complaint in which they represented that Janousek was currently a member of BIG. In addition, the responses of the Slotkys to Janousek's first set of requests to admit stated that Janousek was

still a member of BIG. We further note that while Katten still represented all defendants, they filed a motion to dismiss plaintiff's complaint on the basis that Janousek was still a member of BIG.

¶ 7         On May 10, 2011, BIG, as defendant, moved for the entry of a protective order to prevent the disclosure of materials protected by the attorney-client privilege until Janousek's membership status was conclusively determined. BIG alleged that defendants had submitted joint privilege and redaction logs to Janousek but he subsequently asked the Slotkys to produce certain documents identified on those logs. BIG alleged that it later became involved in their discussion on this matter.

¶ 8         On May 19, 2011, Janousek, individually and on behalf of BIG, filed a motion to compel the Slotkys, BIG III and BIG to produce documents withheld as privileged. Janousek argued, in pertinent part, that communications between the Slotkys and Katten in the scope of BIG's business were not privileged before October 1, 2007, because all defendants maintained that Janousek remained a member of BIG. Thus, he had rights under the Act to manage company business and review any documents generated in the scope of BIG's business during the period of his membership. Janousek also argued that the dual representation doctrine vitiated any possible privileges. Since Katten represented both BIG and its officers in their individual capacity, Janousek argued they not could have a reasonable expectation that their communications regarding BIG's business would be confidential. Specifically, the Slotkys knew that Katten's communications pertained to BIG's business, including insider issues between member managers, as well as the development of BIG III, a competitor of BIG. Accordingly, Janousek argued that as a result of the dual representation, all communications between the Slotkys and Katten leading up to Katten's disqualification on February 17, 2010, were not only discoverable, they were not in any way privileged. In addition, Janousek argued that the Slotkys waived any privileges as to communications between Michael and Katten regarding BIG III when those communications were forwarded to TBI.

¶ 9         Specifically, Janousek argued that, contrary to defendants' assertion, those claims did not remain privileged under the ministerial agent exception because TBI did not facilitate the transmission of the communication itself, but rather, Michael forwarded the communications to TBI and communications ended. Thus, Michael had not sought TBI's assistance in communicating something back to Katten as BIG III's attorney. The motion sought an order compelling defendants to produce all documents listed on their joint privilege log and redaction log, which were attached to the motion. Janousek also filed a response to BIG's motion for the entry of a protective order, incorporating the allegations in his motion to compel.

¶ 10        In response to Janousek's motion to compel, BIG urged the trial court to deny the motion until Janousek's membership status was determined. In the response filed by the Slotkys and BIG III, which has been filed under seal in this court, they similarly urged the court to resolve Janousek's membership status before considering his motion to compel. Both of these pleadings, it bears repeating, would appear to be at odds with defendants' verified answers to the complaints as well as their responses to requests to admit. Defendants also argued that communications between Michael and Katten were protected by the attorney-client privilege and no waiver or exception applied. They further argued that documents forwarded to

ministerial agents to facilitate communications are protected by the attorney-client privilege and that an *in camera* inspection was not warranted. Further pleadings filed by the parties regarding the motion for a protection order and the motion to compel essentially reiterated the same arguments.

¶ 11 At a hearing on the two motions, the court questioned why it could not hold defendants to their position that Janousek remained a member of BIG and noted that Janousek was not the party raising a privilege. In the trial court's written order entered on October 14, 2011, the court found, in pertinent part, that "[p]laintiff's employment was terminated on October 1, 2007, but he remained a minority member." The court also stated, however, that "[p]laintiff was a member of BIG and a part of the control group at least until October 1, 2007[,] and therefore[,] no document or communication containing company business is privileged prior to October 1, 2007." In addition, the court found that as a result of Katten's dual representation of BIG and other defendants, "[d]efendants could not have believed that their communications with Katten would be confidential once they began working adversely to [p]laintiff." The court also found that the ministerial agent exception applies only where the agent acts as the go-between for the client and attorney, but found that here, the communications between Katten and Michael that were forwarded to TBI employees did not request assistance in communicating information back to Katten. Thus, no privilege existed as to those documents. The court granted the motion to compel and denied the motion for a protective order with regard to documents labeled prior to October 1, 2007. The court also granted the motion to compel and denied the motion for a protective order regarding documents dated before Katten's disqualification from representing BIG on February 17, 2010. In addition, the court granted the motion to compel and denied the motion for a protective order as to documents shared with TBI employees. Finally, in regard to matters not at issue before us in this appeal, the court denied the motion to compel and granted the motion for a protective order.

¶ 12 Defendants, in a good-faith attempt to obtain appellate review, respectfully declined to comply with the trial court's order. The trial court then found Michael, BIG and BIG III in contempt of court and ordered them to pay $100. See *Sterling Finance Management, L.P. v. UBS Painewebber, Inc.*, 336 Ill. App. 3d 442, 444 (2002) (a contempt proceeding is a proper method for testing the correctness of a pretrial discovery order). Defendants now appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Feb. 26, 2010).[1]

¶ 13 On appeal, defendants first assert that the trial court's discovery order violated due process by improperly making certain factual findings suggesting that Janousek remained a member of BIG after October 1, 2007, when no evidence has yet been presented to that effect. Although discovery orders are generally reviewed for an abuse of discretion, we review the trial court's determination as to whether a privilege exists *de novo*. *Mueller Industries, Inc. v. Berkman*, 399 Ill. App. 3d 456, 463 (2010). As a threshold matter, we note that when read as a whole, the trial court's order made no clear finding regarding whether

---

[1]We note that Burton was not subject to the trial court's contempt order and thus, has not appealed in this case.

Janousek remained a member of BIG. The order first stated that "[p]laintiff's employment was terminated on October 1, 2007, but he remained a minority member." The court subsequently stated, however, that "[p]laintiff was a member of BIG and a part of the control group *at least* until October 1, 2007." (Emphasis added.)

¶ 14    Even assuming the trial court had unequivocally found that Janousek remained a member of BIG, we remain unpersuaded by the suggestion that it would have been improper for the court to make a determination for discovery purposes under these circumstances. Defendants seemingly fail to comprehend that at the discovery stage of proceedings, the parties generally disclose evidence and acquire evidence from their adversaries, rather than present evidence. Thus, defendants' contention that the trial court should not have entered its discovery ruling until Janousek had presented evidence concerning his membership in BIG is both backwards and circular, as Janousek seeks this information from defendants in discovery so that he *can* demonstrate whether he remains a member of BIG. Defendants' suggested course of conduct, requiring Janousek to present evidence before he has been permitted to obtain that evidence, is premature.

¶ 15    Defendants also argue that such a determination during discovery would be improper because this issue is inextricably intertwined with the merits of the case. Michael and BIG III rely on an unpublished order from the United States District Court in New Hampshire, *Beane v. Beane*, No. 08-cv-236-JL, 2010 WL 882892 (D.N.H. Mar. 5, 2010). There, the district court stated that courts may defer ruling on a jurisdictional issue where jurisdictional facts become inextricably intertwined with the merits. *Id.* at *2. Similarly, BIG relies on an unreported order from the United States District Court in Illinois that concerned jurisdictional and mootness issues at the motion to dismiss stage. *Gomez v. Comerford*, No. 93 C 3268, 1995 WL 23527, at *5-6 (N.D. Ill. Jan. 17, 1995). To state the obvious, defendants have not presented a jurisdictional or mootness issue on appeal, so these citations are of no legal import in this appeal.

¶ 16    To the extent defendants have characterized this as a due process violation, their analysis is markedly insufficient. Courts conducting procedural due process analysis consider (1) whether a liberty or property interest exists that has been interfered with by the state; (2) the risk of an erroneous deprivation of that interest through existing procedures and the value of additional safeguards; and (3) the effect of the monetary and administrative burdens. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 415-16 (1997). Here, however, defendants have failed to develop an argument setting forth how the facts of this case satisfy the aforementioned criteria, as required by Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008). In addition, contrary to defendants' suggestion, our supreme court's decision in *In re R.C.*, 195 Ill. 2d 291 (2001), bears no resemblance to the case before us. *Id.* at 299-300 (the court could not determine whether the statute was unconstitutionally vague as applied where no fact finding had occurred). This court is entitled to be presented with clearly defined issues, citations to pertinent authority and cohesive arguments. *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009). The court "is not merely a repository into which an appellant may dump the burden of argument or research." (Internal quotation marks omitted.) *Id*. Accordingly, defendants' due process argument is forfeited. *Id*.

¶ 17    In any event, defendants remain bound by their representations that Janousek remains a member of BIG. Any admission that was included in an original verified pleading and which is not the product of inadvertence or mistake constitutes a binding judicial admission. *Nissan Motor Acceptance Corp. v. Abbas Holding I, Inc.*, 2012 IL App (1st) 111296, ¶ 19. In addition, such an admission withdraws a fact from issue in the case, making it unnecessary for the opposing party to present evidence in support thereof. *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 31. Furthermore, a sworn factual statement in a verified pleading remains binding on the party following an amendment to the pleading and the party cannot subsequently contradict its allegation. *L.D.S., LLC, v. Southern Cross Food, Ltd.*, 2011 IL App (1st) 102379, ¶ 35.

¶ 18    Here, as stated, all defendants alleged in their verified answers that Janousek is currently a member of BIG. Defendants have never argued that those allegations were mistaken or inadvertent. The Slotkys' responses to Janousek's first set of requests to admit also stated that Janousek was still a member of BIG. Although defendants could have framed their pleadings in the alternative, as Janousek has done, defendants did not do so. In addition, for the first time, in their reply briefs, defendants argue that whether Janousek remains a member of BIG is not a factual question but, rather, is a determination that requires the application of law to facts. This stands in stark contrast with defendants' appellants' briefs, which clearly characterized Janousek's status as purely a factual question, *i.e.*, that the court erred in making a factual finding in this regard before evidence had been presented. See Ill. S. Ct. Rule 341(h)(7) (eff. July 1, 2008) (points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing). Accordingly, defendants have failed to convince this court that they should not be bound by their verified allegations in the trial court that Janousek remains a member of BIG.

¶ 19    Furthermore, to the extent Michael and BIG III argue the trial court erred in finding that defendants worked adversely to Janousek before they were afforded an opportunity to present evidence on that issue, this argument is patently specious. Defendants did not ask to present any evidence, but more importantly, their pleadings provided the trial court with a more than adequate basis for that determination. In the Slotkys' responses to Janousek's requests to admit, the Slotkys identified the operating agreement giving all members of BIG management rights. The Slotkys also identified, however, the resolution through which Michael essentially took sole control of BIG's operations, notwithstanding the Slotkys' denial that Janousek had not participated in the management of BIG since October 1, 2007. The Slotkys, despite their objection to the request, admitted that Janousek's employment ended with TBI on that date. Under these particular circumstances, the court could find that discharging Janousek from TBI was adverse to his rights in BIG because this action reduced his ability to participate in the management of BIG. In the same pleading, the Slotkys admitted that no voting by BIG members had occurred since October 1, 2007, and admitted, despite the Slotkys' objection, that the locks were changed at 1717 Central Street in Evanston, where BIG's books and records were stored. In addition, although the Slotkys' amended responses acknowledged that Janousek had the right to inspect BIG's books and records at that address pursuant to the Act, their original verified responses said otherwise. Finally, the Slotkys admitted that BIG III was in the business of purchasing debt portfolios,

the same business conducted by BIG. The trial court's determination finds ample support in the record.

¶ 20 Next, defendants assert that the trial court nonetheless improperly required defendants to produce materials protected by the attorney-client privilege. The parties cite cases concerning the application of the attorney-client privilege to corporations, rather than limited liability companies.[2] These cases do not control our determination, however, as our decision is governed by Illinois Supreme Court Rule 201(a) (eff. July 1, 2002) and the Act, which specifically applies to LLCs.

¶ 21 Information is generally to be obtained in discovery through the methods enumerated in Rule 201(a). Ill. S. Ct. R. 201(a) (eff. July 1, 2002). In addition, Rule 201(b)(1) provides that "a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action." Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2002). Thus, contrary to defendants' repeated mischaracterizations in both this court and below, any right of Janousek to obtain the requested documents during litigation is granted by his right to discovery, not the Act. Furthermore, Illinois adheres to a strong policy of encouraging disclosure in order to ascertain that truth which is essential to properly disposing of an action. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190 (1991).

¶ 22 Rule 201(b)(2), which governs the attorney-client privilege, states that "[a]ll matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure." Ill. S. Ct. R. 201(b)(2) (eff. July 1, 2002). The attorney-client privilege is intended to promote full and frank consultation between clients and legal advisors by removing the fear that disclosure of information will be compelled. *Waste Management, Inc.*, 144 Ill. 2d at 190. Thus, the privilege is limited to only those communications that the claimant expressly made confidential or communications that, under the circumstances, the claimant reasonably could have believed were understood to be confidential by the attorney. *Id*. In addition, this privilege provides an *exception* to the parties' general duty to disclose and is narrowly construed. *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 78. Furthermore, it is the party *claiming* a privilege that carries the burden of presenting facts that give rise to the privilege. *Consolidation Coal Co.*, 89 Ill. 2d at 119; *Fox Moraine, LLC v. United City of Yorkville*, 2011 IL App (2d) 100017, ¶ 63.

¶ 23 Here, Janousek claims a right to discover defendants' records in litigation through Rule 201. Defendants' suggestion that Janousek has the burden of demonstrating he is entitled to

---

[2]See *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 118-19 (1982) (finding that the control-group test protects consultations with counsel by decision makers and minimizes the amount of relevant material that is immune from discovery); see also *Midwesco-Paschen Joint Venture for the Viking Projects v. IMO Industries, Inc.*, 265 Ill. App. 3d 654, 657 (1994); *SPSS, Inc. v. Carnahan-Walsh*, 267 Ill. App. 3d 586 (1994); *Dexia Credit Local v. Rogan*, 231 F.R.D. 268 (N.D. Ill. 2004); *Milroy v. Hanson*, 875 F. Supp. 646 (D. Neb. 1995); *Gottlieb v. Wiles*, 143 F.R.D. 241 (D. Colo. 1992); *Kirby v. Kirby*, No. Civ. 8604, 1987 WL 14862 (Del. Ch. 1987) (not reported).

share in defendants' alleged privilege is wrongheaded. Janousek is not the party asserting a privilege. Defendants have the burden of demonstrating, as an exception to Janousek's right, that the requested records are protected by the attorney-client privilege.

¶ 24　　　Determining whether defendants have shown the existence of a privilege requires us to examine whether they could have reasonably believed that the sought communications would remain confidential. As stated, the operating agreement specifically grants members the right to inspect BIG's records and books. In addition, section 10-15(a) of the Act provides as follows:

> "A limited liability company *shall provide members and their agents and attorneys* access to its records, including the records required to be kept under Section 1-40, at the company's principal place of business or other reasonable locations specified in the operating agreement. The company shall provide *former members* and their agents and attorneys access for *proper purposes* to records pertaining to the period during which they were members." (Emphases added.) 805 ILCS 180/10-15(a) (West 2010).

Pursuant to defendants' verified answers, Janousek remains a member of BIG. Because the operating agreement and the Act granted members of BIG the right to inspect its books and records, defendants and their counsel could not have reasonably believed that records of communications regarding BIG's business could have been kept confidential from Janousek. Even assuming Janousek was no longer a member after October 1, 2007, as a former member, section 10-15(a) of the Act gave him the right to inspect records pertaining to the period of his membership. Thus, at a minimum, there is no possible valid argument that any privilege could exist regarding records regarding BIG's business through October 1, 2007.

¶ 25　　　In reaching this determination, we reject defendants' suggestion that records cannot include correspondence with attorneys. Although section 1-40 states what types of records must be kept, it does not constitute an exclusive definition of records or state that members have no right to see other types of records that have been created or kept by the LLC. 805 ILCS 180/1-40 (West 2010); see also 805 ILCS 410/1 (West 2010) (defining "Records" under the Uniform Preservation of Private Business Records Act to include, among other things, books of account, documents, cancelled checks, correspondence and other business papers). In addition, defendants' observation that this section limits a former member's access to a *proper* purpose does not assist their position. Regardless of whether Janousek's purpose as to any specific prior request was proper, the import of the statute is that there are circumstances under which members or former members have a clear right to the records. Thus, defendants could not reasonably believe that records regarding BIG's communications with its attorneys would be confidential from Janousek during a period in which he could demand to see those records for any proper purpose.

¶ 26　　　We also note that section 10-15 does not define what constitutes a proper purpose and that defendants, who have the burden of demonstrating that the sought information is privileged, have not stated outrightly that Janousek has sought records for an improper one. See also *Meyer v. Board of Managers of Harbor House Condominium Ass'n*, 221 Ill. App. 3d 742, 747-48 (1991) (pursuant to the General Not For Profit Corporation Act of 1980 (Ill. Rev. Stat. 1989, ch. 32, ¶ 107.75), a proper purpose is one that attempts to protect the

interests of the corporation or the shareholder attempting to obtain the information); *Weigel v. O'Connor*, 57 Ill. App. 3d 1017, 1024-25 (1978) (setting forth the same proper purpose pursuant to the Illinois Business Corporation Act of 1933 (Ill. Rev. Stat. 1975, ch. 32, ¶ 157.45)). Furthermore, section 15-1(a) of the Act, as well as the operating agreement, provided Janousek with management rights. 805 ILCS 180/15-1(a) (West 2010); see also *Weigel*, 57 Ill. App. 3d at 1027 ("The right of a stockholder extends to all books, papers, contracts, minutes, or other instruments from which he can derive any information that will enable him to better protect his interests." (Internal quotation marks omitted.)). Thus, construing the sections of the Act together along with the operating agreement, it would seem inarguable that he has a proper purpose in protecting BIG's financial interests as well as his own. Finally, we remind defendants that it is not the Act or the operating agreement that gives Janousek a right to obtain records in discovery during litigation, but rather, it is Rule 201, which requires only that Janousek is seeking disclosure for the purpose of obtaining evidence relevant to this pending litigation.

¶ 27    In addition, defendants assert that the trial court erred in determining the dual representation doctrine prevented defendants from invoking the attorney-client privilege. In *Mueller Industries, Inc.*, the appellate court considered the dual representation doctrine in the context of two clients who were, coincidentally enough, also represented by Katten. *Mueller Industries, Inc.*, 399 Ill. App. 3d at 464. The court held that the attorney-client privilege did not apply where one client knew that the law firm represented both he and another client regarding matters that were related to Katten's representation of him. *Id.* at 465. The court found that under the circumstances, the client could not have reasonably believed that his communications with Katten would remain confidential following the commencement of the dual representation. *Id.* Furthermore, the court clarified that no reasonable expectation existed as to communications involving matters that would affect both clients and that its holding did not apply to communications concerning purely personal legal matters. *Id.* at 464-65.

¶ 28    Here, Katten simultaneously represented BIG, the Slotkys and BIG III. As stated, the record supports the trial court's determination that defendants began working antithetically to Janousek. In addition, the record indicates that their adverse conduct began by at least October 1, 2007. We note that Janousek has also filed his complaint on behalf of BIG itself. On October 22, 2007, Katten filed BIG III's articles of organization. In operating BIG III, the Slotkys engaged in the same type of business as BIG. Thus, by October 2007, the conduct of the Slotkys and BIG III was adverse to BIG as well. The Slotkys, as representatives of both entities as well as themselves individually, were indisputably aware that Katten represented all defendants. Accordingly, defendants could have had no reasonable expectation that communications made during the dual representation between defendants and Katten regarding BIG and the business of investing in delinquent debt accounts would be kept confidential. Accordingly, no privilege applied to those communications.

¶ 29    Defendants assert that the dual representation doctrine does not apply because "Janousek Has Never Had An Attorney-Client Relationship With Katten And Janousek Cannot Claim He Is A Joint Client After Placing Himself In A Position Adverse to BIG." The trial court did not suggest that Janousek was a client of Katten and our decision is not based on such

-10-

a finding. *Cf. Montgomery v. Etreppid Technologies, LLC*, 548 F. Supp. 2d 1175, 1187 (D. Nev. 2008) (finding the LLC was the sole client and, thus, the former member could not waive the attorney-client privilege to access the LLC's privileged communications). On the contrary, the dual representation doctrine applies because Katten simultaneously represented the Slotkys, BIG III and BIG, although pursuant to defendants' admissions, Janousek has at all times been a member, with membership rights, including the right to see communications made during Katten's representation of BIG.

¶ 30        Notwithstanding defendants' misplaced reliance on *Garvy v. Seyfarth Shaw LLP*, 2012 IL App (1st) 110115, defendants correctly observe that this court stated in *Garvy* that "while a violation of the [Illinois Rules of Professional Conduct] may have relevance to the underlying [malpractice] claims, it has no relevance to the issue of whether the documents in question are protected by the attorney-client privilege." *Id.* ¶ 41. Nonetheless, we find our decision in that case provides an example of how counsel could have better addressed the conflict in this case and prevented the creation of unprivileged communications. In *Garvy*, the law firm Seyfarth Shaw LLP successfully asserted the attorney-client privilege with respect to its communications with its own counsel regarding Garvy's malpractice claims against Seyfarth. *Id*. ¶¶ 18, 31, 35-37. This court found the fiduciary duty exception to the attorney-client privilege did not apply for several reasons, including that Seyfarth had disclosed the existing conflict to Garvy and strongly encouraged him to obtain independent counsel. *Id*. ¶¶ 36-37. Garvy nonetheless had Seyfarth continue representing him and even objected to its withdrawal as counsel. *Id*. Had Katten provided defendants with similar advice in this case and had defendants, unlike Garvy, prudently caused the dual representation to end as a result, defendants may have been able to demonstrate in this case that they reasonably believed their communications with counsel were confidential.

¶ 31        Michael and BIG III further assert that the trial court erred in refusing to apply the ministerial agent exception to four documents sent from Michael to employees of TBI. As stated, Rule 201(b)(2) protects as privileged "communications between a party *or his agent* and the attorney for the party." (Emphasis added.) Ill. S. Ct. R. 201(b)(2) (eff. July 1, 2002). In considering the ministerial agent exception, the parties and the trial court relied on *Abbott Laboratories v. Airco, Inc.*, No. 82 C 3292, 1985 WL 3596 (N.D. Ill. Nov. 4, 1985) (not reported). In *Abbott Laboratories*, the court stated that "[a] recognized exception to the rule that the communication must be directly between the client and attorney is for ministerial agents of the attorney (such as clerks, secretaries and stenographers) or of the client who facilitate transmission of the communication." *Id*. at *4; see also *People v. Knuckles*, 165 Ill. 2d 125, 131 (1995) (finding that typical examples of attorney's ministerial agents include secretaries and clerks). The court also stated that a communication through any form of agency used by the client falls within the privilege. *Abbott Laboratories*, No. 82 C 3292, 1985 WL 3596, at *4. Furthermore, the court recognized that the party asserting a privilege carries the burden of proving that the privilege exists. *Id*. at *2.

¶ 32        Of the 851 entries in the privilege log, defendants argue that 4 of them involved documents sent from Michael to his agents, employees of TBI, and that the trial court should have found those 4 communications were privileged. Defendants have not identified on appeal the place in the record where these four entries can be found, but rather, it appears that

defendants mistakenly expect this court to ferret through the privilege log to find the entries referred to. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (argument shall contain "the pages of the record relied on"). In any event, it also appears that defendants do not dispute the trial court properly interpreted the ministerial agent exception in finding that the agent must serve as a go-between for the exception to apply. Defendants argue only that the trial court "erred by concluding, without conducting an *in camera* inspection of these documents, that 'these forwarded communications did not ask for [the] assistance in communicating something back to Katten, as would be expected if the persons were agents for Defendants.' " We find their criticism of the trial court's failure to conduct an *in camera* inspection to be disingenuous, since in the trial court, the Slotkys and BIG III argued that an *in camera* inspection was unwarranted! Accordingly, defendants have shown no error by the trial court in this regard.

¶ 33   Michael and BIG III also assert that the trial court erred in ordering the disclosure of communications between Michael and his non-Katten attorneys regarding purely personal interests, citing privilege log entries 89, 91, 135 and 136. The privilege log rebuts their allegations as to the latter two entries, which specifically state that the documents were authored by Howard Richard of Katten. As to the former entries, however, the log states that the communications were made between Michael and an attorney from another law firm. Janousek has not responded to this argument, but it does appear from our review of the record that the court did not intend to order the disclosure of those documents and required disclosure only as to communications made pursuant to Katten's dual representation. Accordingly, we clarify now that log entries 89 and 91 are privileged and should not be disclosed.

¶ 34   Finally, Michael and BIG III also argued that the trial court's order was erroneous because certain documents were protected as work product. The attorney-client privilege constitutes a separate and distinct protection from work product. *Waste Management, Inc.*, 144 Ill. 2d at 189. In addition, a party who claims a privilege carries the burden of presenting facts that give rise to the privilege. *Consolidation Coal Co.*, 89 Ill. 2d at 119; *Fox Moraine, LLC*, 2011 IL App (2d) 100017, ¶ 63.

¶ 35   Here, defendants' joint privilege log represented that certain documents were protected as work product. Nonetheless, any references to the work product doctrine in defendants' pleadings were negligible. In addition, at the hearing on BIG's motion for a protective order and Janousek's motion to compel, defendants focused on the attorney-client privilege and did not directly address why any particular documents were protected as work product. Furthermore, the trial court never decided the question of whether defendants' documents were protected as work product. Accordingly, defendants effectively abandoned this issue in the trial court and cannot raise it for the first time on appeal. *In re Marriage of Stockton*, 401 Ill. App. 3d 1064, 1076 (2010).

¶ 36   In conclusion, defendants have not shown on appeal that the trial court's discovery order was erroneous, so they must comply with that order. Because the contempt order in this case was issued solely for the purpose of obtaining appellate review, we vacate the contempt order. *Sterling Finance Management, L.P.*, 336 Ill. App. 3d at 456 (a contempt proceeding is a proper method for testing the correctness of a pretrial discovery order).

¶ 37     For the foregoing reasons, we affirm the trial court's discovery order and vacate the order holding defendants in contempt.

¶ 38     Affirmed in part and vacated in part; cause remanded.